GEORGE BAMRICK, APPELLANT, V. VILLAGE OF MINATARE ET AL., APPELLEES.

FILED JUNE 17, 1929. No. 26595.

*Morrow & Morrow*, for appellant.

*Oscar E. Nelson* and *Mothersead & York*, contra.

Heard before Goss, C. J., Good, Eberly and Day, JJ., and Lightner and Redick, District Judges.

Lightner, District Judge.

This is a suit to enjoin the collection of a special assessment against plaintiff's real estate to pay for a sanitary sewer. The lower court found against plaintiff's contentions and dismissed his action.

The plaintiff, hereinafter referred to as appellant, contends that the special assessments in question were void and therefore subject to this collateral attack, first, because he had no actual knowledge that a levy was made or to be made against his property; second, because his property received no actual benefit from the improvement; and, third, because the ordinance and other proceedings did not purport to make the assessment in proportion to benefits.

Appellant admits that he knew of the construction of the improvements at the time. He offers as an excuse for not knowing of the contemplated levy against his acre property that he understood it had been disconnected from the village prior to the time of his purchase. He therefore paid no attention to any of the proceedings, thinking they did not affect him. And as to both the acre and platted property, he alleges the closest thereof was at least two blocks away from the mains and would not be benefited by it, and he thought therefore that no attempt would be made to levy assessments against it.

The village of Minatare is located mostly in the northeast quarter of the section. Appellant's land lies directly east, 145 acres, 30 acres of which is within the boundaries of the village, and east 15 acres thereof adjoining the village platted, the other 15 acres not platted. It was stated on oral argument that the land which appellant purchased was included at one time within the boundaries of the village, but in the year 1918 proceedings were instituted by a former owner to disconnect it therefrom, and appellant understood when he purchased the property in March, 1920, and was advised by persons of whom he inquired, that all of it had been disconnected from the village. However, he does not claim that any such representation was made by any one having authority to bind the village in an official way. In any event appellant was under the impression that none of his property was included within the boundaries of the village. As a matter of fact, 30 acres of the 145 acres covered by his purchase had not been disconnected by the proceedings above referred to and were still within the boundaries of the village. The sewer in question was finished on or about July 28, 1921. Prior to that time, in the summer of 1920, appellant platted the west 15 acres of the 30 acres, and he was of the impression that by the mere act of platting it became part of the village. The special assessments about which appellant complains was levied on the 13th day of September, 1921, and it must be conceded that they place an enormous burden upon appellant's real

estate, $2,108 having been levied against the platted portion and $2,074 against the acre property. No complaint is made that the proceedings for the creation of the sewer district and the levying of the special assessments were not in due form, and a careful examination of these proceedings indicates that the statute was carefully followed, and that every necessary step was taken by the board of trustees. However, we will go over these proceedings a little more carefully in connection with appellant's claim that the assessments do not purport to be in accordance with benefits.

Appellant's first contention is that he had no actual knowledge that a special assessment was to be levied against the property to pay for the improvement in question. Plaintiff is not entitled to relief in a collateral proceeding on the ground that he did not have actual notice, provided the statutory notice was given. It is so held in the analogous case of substituted personal service where the summons does not get into the hands of the defendant and he receives no actual notice of the suit. 33 C. J. 1083; 32 Cyc. 462; *State v. Trimble*, 309 Mo. 415; *Wells v. Wells*, 279 Mo. 57; *Carroll v. Müller*, 31 Ga. App. 209; *Getchell v. Great Northern R. Co.*, 24 N. Dak. 487. Plaintiff in this case had the notice which the law provides; he had constructive if not actual notice. "Constructive notice," it is said, "is the knowledge which the courts impute to a person upon a presumption so strong of the existence of the knowledge that it cannot be allowed to be rebutted, either from a duty to know imposed by the law, or from his knowing something which ought to have put him upon further inquiry, or from his wilfully abstaining from inquiry to avoid notice." *State v. Omaha Nat. Bank*, 66 Neb. 857, 891. Our judgment is that appellant either knew that his property was inclosed within the sewage district, or was guilty of gross negligence and laches in not knowing it. Minatare is a village of from 500 to 600 population. It has a local newspaper, and at least four notices pertaining to the project were published therein, two weekly publications giving notice of establishment of the district and the boundaries

thereof, two weekly publications of the notice to contractors, two weekly publications giving notice of proposed assessments and of the fact that a schedule was on file showing "the amount proposed to be assessed against each separate piece of property in said district," and one publication of the ordinance confirming the creation and establishment of said district, approving the schedule to be assessed against each separate piece of property in said district and levying said assessments, describing the manner for collection of said assessments, and authorizing the issuance of sewer district bonds and warrants in payment of said improvement. Improvements of this kind in a town of that size could not fail to have the widest publicity, and naturally everyone in the village would know that the work was going on and would have some idea of its cost and would know that the cost would be assessed against the property of the village. Plaintiff admits that he knew that the work was going on. It seems clear that he also knew that there was an intention to assess his property for part of the cost. A witness, Mr. Harshman, testifies that about the time the work was completed he had a talk with appellant in regard to a sewer lateral which he was contemplating, and that during the course of the conversation he said to appellant, referring to his platted 15 acres, "It is all under the main sewer and you will have to pay that anyway." Plaintiff filed the suit to enjoin these assessments in September, 1926, five years after the work was completed and the special assessment levied. During that time assessments were paid on 560 of the 800 tracts in the district in whole or in part. Where the notice required by law has been given and the special taxes duly levied against the property of a litigant and he waits for five years before beginning his action, during which time assessments have been paid on 560 tracts of the possibly 800 tracts comprising the district, the litigant is guilty of laches which will prevent the court from giving him relief except under very extraordinary circumstances.

The second proposition contended by appellant is that his

property received no actual benefits from the improvements, and in connection with this he cites *Hurd v. Sanitary Sewer District,* 109 Neb. 384, wherein it is held: "Special assessments for construction of sewers should be confined to abutting property." It is conceded that appellant's property did not abut upon the sewer, in fact that the closest portion of the same was two blocks away from the line of the sewer. However, the situation was not materially different from that disclosed by the record in the case of *Frohnen v. Sanitary Sewer District,* 115 Neb. 84. In that case "the entire city was included in the sanitary district and the real estate therein generally was charged with special benefits." In the *Frohnen* case, "plaintiffs aver that the main and the laterals are not available to them, that their assessed property is not benefited by the sewage system." We held, however, that these were all matters which should have been presented to the mayor and council, that such questions are not open upon collateral attack. The same propositions were before us also in the case of *Weilage v. City of Crete,* 110 Neb. 544, and we there held:

"Where, in the making of assessments for local improvements and the levy therefor, property owners have opportunity to present their objections to the municipal body and to there have a hearing and pursue proceedings for review of the final decision of that body whether by error or appeal, they cannot fail to do so and then, in the absence of a substantial jurisdictional defect in the proceedings, question the proceedings collaterally by an independent suit to restrain the making of the levy."

Neither do we believe that the record shows, at least except by inference, that appellant's property did not receive actual benefits from the construction of the sewer equal to the assessments. The only proof tending to support his contention that his property did not receive actual benefits is the conceded fact that the closest of it is two blocks away from the main line of the sewer. It is shown that appellant paid $135 an acre for this real estate in March, 1920. He was asked if he knew the value of this land in 1921, about

the time the sewer was built, and he said, "Why, things were pretty high then. Well, after the deflation took place you couldn't get rid of anything and I couldn't say then, but things dropped, a half anyway." Question: "The deflation took place during 1920?" Answer: "Yes." This is the only evidence bearing on the question of value, the only evidence that tends to prove in any way that appellant's property was not benefited by the improvement.

We think that it is impossible to find from this evidence that appellant's property was not benefited to the full extent of the assessments against him. Presumably the construction of the main sewer benefited all of the real estate in the village, since that was the first step in a system which later by use of laterals would eliminate the objectionable conditions which exist in villages which do not have sanitary sewage connections. In view of these holdings and facts appellant's second contention should also be overruled.

The third contention is that the ordinances and other proceedings did not purport to make the assessment against the property in proportion to the benefits. In the original resolution establishing the district it is said: "The costs of said main and outlet sewer shall be assessed on the property therein benefited to pay therefor." In the published notice fixing September 13, 1921, at 8 p. m., as the time when the board of trustees would meet as a board of equalization and adjustment, it is said: "The proposed assessment shall be adjusted and equalized with reference to benefits resulting from the improvements constructed in main sewer district and such assessment shall not exceed such benefits." In the final resolution making the assessment it was found: "That said proposed assessment heretofore filed with the village clerk to cover the entire costs of the improvements * * * in said main sewer district, upon each and every of said lots, blocks, and parcels of land in said district is just and equal with reference to the benefits resulting from said improvements and should be and hereby is made in accordance with said proposed schedule."

We think that these proceedings sufficiently show that

the board of equalization and adjustment purported to assess appellant's property only to the extent that it was benefited by the improvements.

Appellant further contends that the notice above referred to was in effect an invitation to appellant to remain away from the meeting since his property could not possibly be benefited. The fact that his property was included within the district was notice to him that special assessments might be levied against it. He remained away at his peril.

In view of these considerations, the judgment of the lower court is right, and it is hereby

AFFIRMED.

Note—See Municipal Corporations, 44 C. J. 631 n. 16, 654 n. 90, 754 n. 82, 759 n. 83, 768 n. 56; 9 A. L. R. 634; 25 R. C. L. 180, *et seq.*; 3 R. C. L. Supp. 1410; 5 R. C. L. Supp. 1313; 6 R. C. L. Supp. 1458.