EFFIE D. WEAD ET AL., APPELLEES, V. CITY OF OMAHA, APPELLANT.

EDWARD PHELAN ET AL., APPELLEES, V. CITY OF OMAHA, APPELLANT.

FILED MARCH 2, 1933. No. 28411.

*Fred A. Wright, Thomas J. O'Brien, Harry B. Fleharty* and *Bernard J. Boyle,* for appellant.

*William H. Herdman, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ.

GOOD, J.

Plaintiffs sued to have adjudged void, and to enjoin the defendants from collecting, certain special assessments, levied by the city of Omaha by special levy ordinance No. 5337 to cover, in part, the cost of lands appropriated by the defendant city for opening and extending St. Mary's avenue from Twenty-seventh street to a point on Leavenworth street between Thirty-first street and Thirty-first avenue. Decrees were entered for plaintiffs as prayed, and defendant has appealed.

Plaintiffs allege that their several parcels and tracts of land derived no special benefits from such public improvement; that the levy of said special assessments was grossly unjust, fraudulent, arbitrary and the taking of

plaintiffs' properties without due process of law, in contravention of the provisions of both state and federal Constitutions.

Prior to the public improvement in question, St. Mary's avenue extended westerly from Seventeenth and Howard streets to Twenty-seventh street in said city. The avenue was extended in 1925; the ordinance levying the special assessments was passed July 21, 1925. These actions were begun, respectively, April 9 and 10, 1931.

It is conceded that the city authorities in every respect followed the letter of the statute in making the public improvement and in making the levy of special assessments. Plaintiffs contend that, their respective properties not having derived any benefits, the action of the city authorities in making any levy against their properties was arbitrary and fraudulent. No other fraudulent act than this is claimed by plaintiffs. Defendant contends that whether the plaintiffs' properties were specially benefited by the improvement and the extent of benefits were questions of fact, and were to be determined by the city council sitting as a board of equalization; that, in determining these facts, the council acted judicially, and that, since plaintiffs were afforded a remedy by appeal to the district court from the action of the city council, they may not now resort to a court of equity in a collateral proceeding to attack the validity of the assessments.

The law provides for notice to the persons whose lands are alleged to have been benefited by the improvement and for a hearing before the board of equalization. Plaintiffs had the notice and were afforded an opportunity to make objections to the city council and, if aggrieved by its action, to appeal to the district court. They filed no objection or protest and did not appeal from the action of the city council in making the levy of special assessments.

Plaintiffs concede that, unless the special assessments are void, they cannot be attacked collaterally, but they argue that, since the record in this case shows that

plaintiffs' properties derived no special benefits from the improvement, therefore the action of the city council, sitting as a board of equalization, in the enactment of the ordinance levying assessments was arbitrary, fraudulent and void.

Sections 14-302 and 14-528, Comp. St. 1929, authorize, respectively, the creation of improvement districts and the assessment of special taxes for the improvement of streets and alleys. Section 14-536, Comp. St. 1929, is, in part, as follows: "All special assessments to cover the cost of any public improvements herein authorized shall be levied and assessed on all lots, parts of lots, lands and real estate specially benefited by such improvement, or within the district created for the purpose of making such improvement, to the extent of the benefits to such lots, parts of lots, lands and real estate by reason of such improvements, such benefits to be determined by the council sitting as a board of equalization." Section 14-538, Comp. St. 1929, provides for the council to sit as a board of equalization, fixes the time of its meetings, and further provides as follows: "At such session the said board shall hear and determine all such complaints, and shall equalize and correct such assessment, and after all corrections have been made the council may levy such special assessments by ordinance at a regular meeting thereafter. The ordinance levying a special assessment shall be final and binding as the final order or judgment of a court of general jurisdiction. After the passage of such ordinance no court shall entertain any action for relief against such special assessment, except upon appeal from such final order, which remedy shall be deemed exclusive." Section 14-539 provides that any person who has filed a written complaint before said board shall have the right to appeal to the district court for the county within which such city is located, and if the court find such assessment to be valid it shall render a decree for the amount of the assessment, interest and costs, and declare the same a lien upon the lots of land so assessed, and if the court

find that the tax is invalid it shall order a relevy of such assessment, or render such decree as may be just and equitable. That in such case the city council, sitting as a board of equalization, acts judicially is not only so declared by statute but has been held by this court in numerous cases.

It is a general rule that the decisions of a special tribunal, having jurisdiction over the subject-matter and the parties, is conclusive, unless reversed or modified in the manner provided by law. See *Portsmouth Savings Bank v. City of Omaha*, 67 Neb. 50; *Omaha & N. P. R. Co. v. Sarpy County*, 82 Neb. 140; *Burkley v. City of Omaha*, 102 Neb. 308; *Weilage v. City of Crete*, 110 Neb. 544; *Frohnen v. Sanitary Sewer District*, 115 Neb. 84; *Bamrick v. Village of Minatare*, 118 Neb. 644.

In 5 McQuillin, Municipal Corporations (2d ed.) sec. 2277, it is said: "The general rule is that, where a municipality has power to make the local improvement and acquires jurisdiction by the proper preliminary steps, objections to an assessment, not of a fundamental character, are deemed to be waived if not presented at the time and in the manner prescribed by law. * * * And, speaking broadly, failure of a property owner to appear before the proper tribunal and object to an assessment, or to appeal therefrom, within the time provided by law, will estop him from contesting the validity of the assessment or restraining the collection thereof on the mere ground of irregularities. * * * Where the law provides a tribunal to pass upon all objections to special assessments and correct inequalities therein, and if the property owners feel themselves aggrieved appeals to the court are given them, such procedure is generally held exclusive, and the decision of the tribunal unless appealed from is also generally held conclusive on the property owners assessed, except in case of fraud, or fundamental defects, or an entire want of jurisdiction." And in the same volume, at section 2270, it is said: "Assessments may be attacked by landowners required to pay, in whole or

in part for the improvement, only when they have been injuriously affected by the proceeding, where complaint is seasonably made, or within the time prescribed, but not afterwards, and provided they are not estopped by reason of their prior conduct from urging the invalidity. The right of a property owner to question the validity of his assessment on the ground that his property is not benefited or that the assessment is in excess of the benefit for which his property is assessed must be exercised ·in the assessment proceedings before the assessment is finally confirmed, and the determination of the local authorities is final in the absence of fraud or manifest ·violation of law. All defects, errors, irregularities, and inequalities in the making of special assessments or in proceedings prior thereto, not raised by proper objection before the improvement authorities or on appeal, are waived, and cannot be questioned in a collateral proceeding."

To the rule thus announced there are some apparent exceptions. For instance, where the record discloses that the physical facts are such that the property was not and could not have been specially benefited, or could not have been benefited to any extent approaching the assessment, such facts have been in some cases held to show that the levy of assessment was arbitrary and constructively fraudulent, and therefore void, and might be attacked collaterally.

The case of *Standard Pipe Line Co. v. Miller County Highway & Bridge District*, 277 U. S. 160, illustrates the exception to the rule. In that case a road district constructed a highway and assessed against the pipe line traversing the district special benefits therefor to the extent of $5,000 a mile. The pipe line had originally cost less than $9,000 a mile. The collection of the assessment was enjoined in an action in equity. In that case the facts demonstrated that the assessment levied was so unjust and arbitrary as to be constructively, if not intentionally, fraudulent. The rule in such cases is stated

in Hamilton, Law of Special Assessments, sec. 760, wherein it is said: "Where an assessment for street improvements is arbitrary and fraudulent, and therefore void, the appeal provided by the charter is not the only remedy. The person aggrieved may have his remedy in equity, or a common-law action for damages. Equity will enjoin the collection of a void local assessment, and taxpayers are not relegated to an appeal from an assessment."

And it is stated in 25 R. C. L. 141, sec. 58, in this language: "When it is plainly and palpably manifest from the physical condition of the property involved, its locality, environment, character of the work or improvement, assessment, and from the very nature of things, that an assessment is not adapted to the purpose, and is an exaction from the property owner of a contribution which he should not be obliged to make in that capacity, the courts will interfere to prevent a consummation of the injustice. So in those cases where the power to determine local improvements and levy assessments is delegated to a common council, while the presumption is that the council has done its duty, this presumption may be overcome by facts showing that the rule prescribed for the apportionment or the assessment made under it is so grossly and palpably unjust and oppressive as to give demonstration that the proper authority had never determined the case on the principle of taxation." In such cases the assessment may be attacked collaterally.

Plaintiffs also cite and rely upon a number of cases which, in effect, hold that special assessments may only be levied on property specially benefited and only to the extent of such special benefits, and that special assessments in excess of special benefits conferred amount to the taking of private property without just compensation. This is a well-recognized rule; but, if the question as to whether the property has been benefited and the extent of such benefits has been litigated by a tribunal having jurisdiction of the person and the subject-matter, the assessment may not be attacked in a collateral proceeding,

except for fraud, either actual or constructive.

In the instant case plaintiffs introduced the evidence of a single witness. He testified that in his opinion the respective properties of the plaintiffs were of no greater value immediately after the improvement than before, and that no special benefits were derived from the improvement. He also testified as to the locations of the various properties with reference to the improvement. Some of them were practically half a mile from the improvement, and others were a less distance. He further testified that ingress and egress to and from the respective properties were afforded by other streets and avenues.

From the physical facts disclosed by the record, we are unable to say that the properties of plaintiffs received no benefits from the improvement, or that the assessments levied were so excessive as to indicate an arbitrary or fraudulent action by the city council, sitting as a board of equalization. The city introduced no evidence. We are therefore confronted with this proposition: Is the court required to hold that the action of the council in levying the assessment was arbitrary and fraudulent because, in the opinion of the only witness called, the properties derived no special benefits from the extension of St. Mary's avenue? We think not. It is a matter of common knowledge that the values of property and the extent of benefits conferred by local improvements are largely matters of opinion, and that these opinions vary widely. We think we are justified in holding the action arbitrary and fraudulent only where the physical facts disclosed are such that the court can say, beyond question, that the action of the taxing authorities was arbitrary and therefore constructively fraudulent.

We are of the opinion that plaintiffs were afforded an adequate remedy in the assessment proceedings, and that, having failed to avail themselves of the right which the statute gives of a direct appeal to the courts in that proceeding, they are now precluded, under the facts disclosed, from attacking the assessments in a collateral proceeding.

The decrees of the district court in these cases are reversed, and the actions dismissed.

REVERSED AND DISMISSED.