JERRY BELZA, ON BEHALF OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED, APPELLEE, V. THE VILLAGE OF
EMERSON, A MUNICIPAL CORPORATION, NEBRASKA, ET
AL., APPELLANTS, IMPLEADED WITH GERALD B.
LONGWELL, COUNTY TREASURER OF DAKOTA
COUNTY, NEBRASKA, APPELLEE.

68 N. W. 2d 272

Filed January 28, 1955. No. 33519.

*Harold T. Curtiss,* for appellants.

*Mark J. Ryan,* for appellee.

*Paul H. Bek* and *Ivan A. Blevens,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Jerry Belza, on his own behalf and all others
similarly situated, brought this collateral equity action
against defendants village of Emerson, the individual
members of its board of trustees, and Gerald B. Long-
well, county treasurer of Dakota County. Such action
sought to have certain sewer assessments made and
levied by the village against plaintiff's real estate located

therein declared to be null and void and not a lien thereon; and to obtain an injunction preventing collection thereof. After a trial the court rendered judgment in favor of plaintiff in his own behalf without granting any relief to others similarly situated. Motion for new trial was overruled, whereupon the village of Emerson and its trustees appealed, assigning substantially that the judgment was not sustained by the the evidence and was contrary to law.

In a former opinion, Belza v. Village of Emerson, 158 Neb. 641, 64 N. W. 2d 214, we affirmed the judgment primarily upon the ground that the assessments never became a valid lien because they were never certified or placed upon the property tax lists in the manner or within the time provided by law. The decision was of great public interest and concern to many cities of the second class and villages in this state because it directly affected the collection of special assessments levied and assessed by them. Therefore, upon application by the city of Seward, we permitted it to file a brief amicus curiae in support of a request for reconsideration of our opinion and decision. In the light thereof we granted reargument, and upon further consideration of the facts and applicable law we conclude that our former opinion was erroneous in some material respects. Therefore such opinion and decision are hereby vacated and set aside.

In that connection, plaintiff's petition substantially alleged as follows: That on September 9, 1948, he became the owner of the property involved, described lots located in that part of the village of Emerson within Dakota County; that the village claimed a lien against plaintiff's property by reason of certain special sewer assessments purportedly levied on January 18, 1923; and claimed that it had a right to collect same, together with interest and penalties. Plaintiff alleged that such assessments were null, void, and unenforceable because: (1) That said main sanitary sewer district No. 1 was not

organized according to law; (2) that no proper resolution was passed and adopted by the chairman and board of trustees; (3) that no resolution stating the kinds of material to be used, the method of construction, the extent of the work, the amount of the engineer's estimate of the total cost thereof, the kind and size of the sewer, the designation of its location and terminal points, and the outside boundaries of the district in which it proposed to assess the cost on the property benefited to pay the same, was ever legally passed and adopted; (4) that notice of the time set for the consideration of said resolution was not given as required by law; (5) that no proper notice to contractors was given as required by law; (6) that no certificate of any qualified engineer accepting said work and improvement was ever filed with the clerk of defendant village; and (7) that no hearing was had on the proposed assessments of benefits by said village board sitting as a board of assessment and equalization after notice as required by statute, and that no proper notice of such meeting was ever given as required by law.

In that regard, as held in Majerus v. School District, 139 Neb. 823, 299 N. W. 178: "The law presumes official acts of public officers, in a collateral attack thereon, to have been done rightly, and with authority, in the absence of evidence to the contrary, and, in such a collateral attack, acts done, which presuppose the existence of other acts to make them legally effective, are presumptive proof of the existence of such other acts." See, also, Campbell Co. v. City of Harvard, 123 Neb. 539, 243 N. W. 653. Further, an examination of the record herein discloses competent evidence from which we conclude that none of plaintiff's foregoing seven contentions has any merit. Some of the pertinent minutes and other records with relation to the village sewer district proceedings could not be found in the village archives or elsewhere after diligent search, but some were so found, and after proper foundation laid, second-

ary evidence with relation to the existence and validity of those not so found was adduced, as approved and authorized by Village of Deshler v. Southern Nebraska Power Co., 133 Neb. 778, 277 N. W. 77; Clough v. North Central Gas Co., 150 Neb. 418, 34 N. W. 2d 862; City of Scottsbluff v. Kennedy, 141 Neb. 728, 4 N. W. 2d 878; section 84-315, R. R. S. 1943; and section 25-1279, R. R. S. 1943.

Such evidence included a certified transcript and history of the entire village sewer district proceedings furnished as required by section 299, C. S. 1922, now section 10-117, R. R. S. 1943, in connection with an application for the authorization to issue bonds for construction of the sewer system on file in the office of the Auditor of Public Accounts, who certified that he had examined the proposed bond and certified transcript of all proceedings previous to the issuance thereof, found that said bonds had been regularly and legally issued for a lawful purpose and registered in his office as required by law, and that he certified the same with approval to the county clerks of Thurston, Dixon, and Dakota counties, who in turn respectively certified the same as registered in their offices. The record does disclose that the cost of the sewer disposal plant may have been included in the levy of special assessments, contrary to our holding upon direct attack in Hurd v. Sanitary Sewer District, 109 Neb. 384, 191 N. W. 438, which simply authorized new levies to be made. However, as we view it, plaintiff's petition in the case at bar never raised that question. He simply alleged that the assessments were wholly void and unenforceable for other specifically recited reasons. From this record we are required to conclude that the sewer district was regularly organized and constructed, that special assessments therefor were regularly levied and assessed, and bonds were regularly issued to pay for construction, which was completed and accepted, all entirely in con-

formity with sections 4337 to 4351, and section 299, C. S. 1922, then controlling.

On the other hand, plaintiff alleged: "That no special assessments against the property owned by this plaintiff * * * within said alleged Sanitary Sewer District No. 1, were ever certified to the County Clerk of Dakota County, Nebraska, for the purpose of being placed upon the property tax lists for collection as provided by Section 4369 of the Compiled Statutes of Nebraska for 1922" and "That no special assessments for the construction of a sewer in Main Sanitary Sewer District No. 1 of the Village of Emerson, Nebraska, were ever placed upon the property tax lists of Dakota County, Nebraska, by the County Clerk of said county."

The evidence with relation to such contentions is without dispute. It substantially discloses that on or about March 10, 1923, C. V. Dunn, who was deceased some 2 years before this litigation arose, prepared an instrument signed and certified by him as village clerk of the village of Emerson, Nebraska, and bearing the official seal of such village. At the top thereof appear the words: "CLERK'S CERTIFICATE OF UNPAID .ASSESSMENTS TO THE COUNTY TREASURER." The body of the instrument read:

"State of Nebraska    )
                      )  ss.
County of Dakota      )

"TO THE COUNTY TREASURER OF DAKOTA COUNTY, NEBRASKA.

"I, C. V. Dunn, Village Clerk of the Village of Emerson, Dakota County, Nebraska, hereby certify. that at a meeting of the Board of Trustees of the Village of Emerson, Nebraska, held on the 18th., day of January 1923, the said Board of Trustees *did levy a special .assessment,* for and on account of the construction of Main and Saniatary (sic) Sewer System and Disposal Plant in Main Sanitary Sewer District Number One (1) of said Village and against the real estate located within

said district, including the real estate and personal property of the Chicago, St. Paul, Minneapolis and Omaha Railway Company, *all as shown on the schedule hereto attached,* said Main Sanitary Sewer District Number One (1) being wholly within the limits and boundaries of the Village of Emerson, Nebraska. (Italics supplied.)

"The total amount of unpaid assessments shown on said schedule is Five thousand nine hundred and forty ($5940.00) Dollars.

"I further certify that the said assessments are payable at the time and in the installments shown below, and delinquent after said dates:

"One-fifth on the 10th., day of March 1923,
"One-fifth on the 10th., day of March 1924,
"One-fifth on the 10th., day of March 1925,
"One-fifth on the 10th., day of March 1926,
"One-fifth on the 10th., day of March 1927.

"All installments to bear interest at the rate of 6% per annum and all delinquent installments bear interest at the rate of 12% per annum.

"The bonds issued in anticipation of this assessment are non-optional, hence interest should be collected on payments made in advance of dates due.

"In witness whereof I have hereunto set my hand and affixed the seal of the Village of Emerson, Nebraska, this 10th., day of March 1923."

Such certificate and attached schedule of assessments, entitled "Special Assessment Tax List Sanitary Sewer in Village of Emerson, Dakota County, Nebraska, Date Issued January 18, 1923, Certified to County for Collection March 10, 1923, Rate 6 Per Cent" described each property and set forth the amounts assessed against same. They reached the county treasurer's office and were there found by the present county treasurer when he assumed office in 1947. They were in a separate bound book volume, as permitted by section 5957, C. S.

1922, now section 77-1304, R. R. S. 1943. They bore no filing mark or stamp of any kind of either his office or that of the county clerk, but we have been unable to find any statute which required that to be done. The present county treasurer had no knowledge of how such record got there or when, but it clearly discloses that credits for payment of such assessments were respectively entered thereon over a period from at least December 11, 1923, and until July 5, 1952, so it may be inferred that such bound volume was in the country treasurer's office during all that period.

The sewer assessments recited therein did not appear upon any other tax lists in his office then or during his term of office, and no tax sale certificates were ever issued therefor as far as he knows or his record discloses. During the last 2 years the tax lists have been prepared by the county assessor, but prior thereto they were prepared by the county clerk. Up until such time the normal procedure in the county treasurer's office was to receive the tax books or schedules, similar in material respects with that appearing herein, from the county clerk by simple informal delivery by such clerk to his office. Thereby, the county treasurer enforced collection of the assessments by virtue of mere possession of such certificate and schedule. Therefrom he found the designation of the property and the amount of the assessments on each lot, and when paid the notation of it was made thereon. In such situation, if the certificate and attached schedule aforesaid had been addressed to the county clerk and delivered to him by the village clerk, as it may well have been for aught the record shows, instead of being addressed to the county treasurer, the certificate required by statute would have been regular and complete. The fact is, the attached schedule or tax list was substantially complete and lacked only the certificate or warrant of the county clerk, which was a mere irregularity (§ 77-1854, R. R. S. 1943), or

informality, which could be supplied upon discovery of the deficiency (§ 77-1616, R. S. Supp., 1953). See, also, § 77-1853, R. R. S. 1943.

In connection with the foregoing, an abstracter of 50 years experience in Dakota County, who had extended or prepared some 10,000 abstracts, first saw and examined the certificate with schedule attached, several years ago, about the time when it was placed in the county treasurer's office, and in preparation or extension of several abstracts of property described therein, he had certified as liens against the property involved any unpaid sewer assessment liens appearing therein at all times except upon one occasion, and then his attention was called to that omission, whereupon he reexamined the certificate. Whether or not such occasion was the one involving plaintiff's property is not directly shown, but may be reasonably so inferred from the fact that plaintiff received a warranty deed for the property involved on September 9, 1948, and thereafter the regular taxes were paid until 1952 when the county treasurer first called plaintiff's attention to the special sewer assessments and requested payment thereof, which was refused.

As heretofore noted, plaintiff relied upon section 4369, C. S. 1922, now section 17-702, R. R. S. 1943. He made no contention that section 5981, C. S. 1922, now section 77-1612, R. R. S. 1943, relied upon in our former opinion, was either factually or legally controlling in this case. It now appears that such section, when considered with others in pari materia therewith, relates to the several *amounts* of taxes required by law to be certified by the county clerk and *levied by the county board of equalization*. The special assessments here involved were required to be *levied by the mayor and council or the board of village trustees.* § 4345, C. S. 1922, now § 17-921, R. R. S. 1943. As the case comes to this court, we conclude that section 77-1612, R. R. S. 1943, has no con-

trolling relation factually or legally to the special assessments involved.

On the other hand, section 17-702, R. R. S. 1943, simply required the council or board of trustees at the time required by law to cause to be certified to the county clerk *the percentage or number of mills on the dollar of tax levied* for all city or village purposes by them on the taxable property within the corporation *"for the year then ensuing, as shown by the assessment roll for such year"* including all special assessments and taxes assessed as hereinbefore provided. It then limits the number of mills on the dollar which may be so certified, assessed, and collected. We find nothing in that section which requires that special assessments as such shall be certified to the county clerk and as such placed on the property tax lists in order to become a valid lien. Such section, as the case comes to this court, is not either factually or legally controlling herein.

With regard to sewer assessments, section 4345, C. S. 1922, now section 17-921, R. R. S. 1943, provides: "After the equalization of such special assessments as herein required, the same shall be levied by the mayor and council or the board of village trustees, upon all lots or parcels of ground within the district specified which are benefited by reason of said improvement. The same may be relevied if, for any reason, the levy thereof is void or not enforceable and in an amount not exceeding the previous levy. *Such levy shall be enforced as other special assessments,* and any payments thereof under previous levies shall be credited to the person or property making the same. All assessments made for such purposes *shall be collected in the same manner as general taxes* and shall be subject to the same penalties." (Italics supplied.)

In that regard, section 17-514, R. R. S. 1943, formerly a part of section 4283, C. S. 1922, provides: "All assessments *shall be a lien on the property on which levied from the date of levy,* and shall thereupon be certified

by direction of the council or board of trustees to the treasurer of such city or village for collection; and such assessment shall be due and payable to such treasurer until the first day of November thereafter, or until the delivery of the tax list for such year to the treasurer of the county in which such city or village may be situated, at and *after which time the same shall be due and payable to such county treasurer.* The council or board of trustees of such city or village shall, within the time provided by law, cause such assessments, or portion thereof then remaining unpaid, to be certified to the county clerk of said county for entry upon the proper tax lists; and in case the city or village treasurer shall collect any assessment or portion thereof so certified while the same shall be payable to such treasurer as aforesaid, the same shall be by the treasurer certified to the county treasurer at once, and the latter shall correct his record to show such payment." (Italics supplied.) As we view it, such section is the key to a solution of the present case, since, as provided by section 17-921, R. R. S. 1943, the levy for sewer assessments must be enforced as all other special assessments and collected in the same manner as general taxes, and subject to the same penalties. See, also, § 77-1858, R. R. S. 1943.

In Polenz v. City of Ravenna, 145 Neb. 845, 18 N. W. 2d 510, the city levied special assessments on the property involved for designated total amounts, one-twentieth of which became due annually, and if not paid when due, became delinquent. The city did not certify the total of unpaid assessments to the county clerk as required by section 17-514, R. R. S. 1943, but rather only as annual installments became delinquent they were certified to the county clerk and thereafter appeared upon the tax records in the office of the county treasurer. At the date of commencement of a tax certificate foreclosure and at the time of the decree therein, the last three special assessments were not delinquent and had not been certified to the county authorities, but they

were thereafter so certified. In speaking of the levied special assessments, we said: "The amounts became a. lien against said premises from the date of the levy in accordance with the provisions of section 4283, Comp. St. 1922, now section 17-514, R. S. 1943. * * * The question here is: Are these three installments liens upon the property after title has passed to the purchaser at the foreclosure sale?" We concluded that they were not because a valid title conveyed under the tax sale was not derivative but a new title in the nature of an independent grant by sovereign authority, and the purchaser took same free from any encumbrances, claims, or equities connected with the prior title. See, also, Dent v. City of North Platte, 148 Neb. 718, 28 N. W. 2d 562; Coffin v. Old Line Life Insurance Co., 138 Neb. 857, 295 N. W. 884. By analogy herein, the amounts involved became a lien against plaintiff's premises from the date of the levy, and he has a derivative title.

In construing the sewer assessment statutes here involved, we concluded in Weilage v. City of Crete, 110 Neb. 544, 194 N. W. 437, that generally where a city or village has made public improvements and levied special assessments therefor, and property owners have opportunity to present their objections to the municipal body and to there have a hearing and pursue proceedings for review of the final decision of that body, whether by error or appeal, they cannot fail to do so and then collaterally maintain an independent suit to restrain collection of the special assessments in the absence of fraud or a substantial jurisdictional defect in the proceedings. See, also, Bamrick v. Village of Minatare, 118 Neb. 644, 225 N. W. 755; Wead v. City of Omaha, 124 Neb. 474, 247 N. W. 24. Cases cited in our former opinion involved such defects.

In that regard, as aptly stated in People's Water Co. v. Boromeo, 31 Cal. App. 270, 160 P. 574, a case often cited: "The argument of the appellants that every step in the process of making up the assessment-roll is

*strictissimi juris,* and must be complied with to the letter before a valid obligation to pay taxes is imposed upon the property owner, while no doubt true in its application to the proceeding leading up to a valid levy and assessment of the tax, has not been held to apply with the same degree of strictness to the mere ministerial acts of the clerk of the board of supervisors and of the auditor in making the affidavits and carrying out the computations after the taxes have been duly levied and assessed. (Steele v. San Luis Obispo County, 152 Cal. 785, [93 Pac. 1020].)" Our statutes cited herein require the same conclusion in the case at bar.

We conclude that, in the light of the foregoing evidence and authorities, the sewer assessments here involved were regularly levied and assessed, thus were at all times a lien upon the property from the date of the levy, and there was simply an irregularity in the manner of certification and attempted collection thereof. We have found no statute of limitations barring the collection of special assessments and no authorities have been cited or found which could make them void by reason of laches or estoppel by the city or county. Rather, in Omaha National Bank v. Jensen, 157 Neb. 22, 58 N. W. 2d 582, after concluding that: "Statutory provisions for the levy of a tax are imperative," we held: "Public policy, to prevent loss to the state through the negligence of public officers, forbids the application of the doctrine of estoppel to the state, growing out of the conduct and representation of its officers.

"Taxation and the collection of taxes are strictly governmental activities as distinguished from private and proprietary activities, and the public as to such activities cannot be estopped."

Further, in Flansburg v. Shumway, 117 Neb. 125, 219 N. W. 956, this court held: "The lien of taxes regularly levied on real estate is, ordinarily, perpetual and can be divested only by payment or in some manner authorized by statute."

For reasons heretofore stated, we conclude that plaintiff could not maintain his cause of action. Therefore, the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to dismiss the same. All costs are taxed to plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., not participating.