LARRY E. REISER ET AL., APPELLEES, V. MICHAEL HARTZLER ET AL., APPELLANTS.

331 N.W.2d 523

Filed March 25, 1983. No. 81-894.

John P. Peetz III of John Peetz, P.C., for appellants.

P. J. Heaton, Jr., for appellees.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

HASTINGS, J.

The plaintiffs are the owners of certain residential lots located on the north side of Toledo Street in the city of Sidney. They brought this action in equity against the defendants, members of the city council and the city of Sidney itself, seeking to have declared null and void certain special assessments levied against their properties resulting from the paving of Toledo Street, alleging an absence of special benefits. The District Court found that the "[b]enefits to plaintiffs appear to the Court to be little, if any, greater than to the public at large," and ordered "that the taxes assessed, levied and collected from plaintiffs . . . were illegally assessed, levied and collected and that plaintiffs . . . shall be and are entitled to the refund of such taxes paid . . . ." The defendants on appeal to this court have alleged as errors: (1) That the plaintiffs failed to follow the specified statutory scheme for relief in this type of situation; and (2) That the evidence does not support a finding that plaintiffs' properties were not and could not be specially benefited so as to sustain a collateral attack on the assessment.

Neb. Rev. Stat. § 16-637 (Reissue 1977) provides generally that any party feeling aggrieved by any special assessment may pay the same under protest, shall give written notice to the city treasurer of an intention to sue to recover such payment and within 60 days thereafter shall have the right to bring a civil action to recover so much of such special taxes as may be shown to be illegal, inequitable, and unjust. Neb. Rev. Stat. §§ 19-2422, 19-2423, and 19-2425 (Reissue 1977) provide that any owner of real property who feels aggrieved by the levy of a special assessment may appeal the same, both as to the validity and amount thereof, to the District Court by filing with the city clerk a written notice of appeal

within 10 days of the levy and a petition on appeal and transcript with the District Court within 30 days of the levy of such special assessment.

Neither of these statutory procedures was complied with in this case. According to the contention of the defendants, these remedies are exclusive and therefore the plaintiffs' action should be dismissed. However, the plaintiffs cite the general rule that where it is alleged and proved that the physical facts are such that property was not and could not be specially benefited, the levy may be held to be arbitrary, constructively fraudulent, and therefore void and subject to collateral attack. *Nebco, Inc. v. Speedlin,* 198 Neb. 34, 251 N.W.2d 710 (1977). We agree with the position taken by the plaintiffs.

However, to sustain the action taken by the trial court, it is necessary that the evidence support a determination that in fact the property in question was not and could not be specially benefited by the paving of Toledo Street. Mere excessiveness of a special assessment may not be corrected in a collateral attack upon the assessment. A property owner who attacks a special assessment as void has the burden of establishing its invalidity. Since this is a proceeding in equity we examine the record de novo. *Nebco, Inc. v. Speedlin, supra.*

The properties which are the subject of this litigation are Lots 5 through 12, Block 2, Park Manor Estates Addition to Sidney. These properties form the southern tier of lots in the subdivision and, as previously mentioned, are located on the north side of Toledo Street. The front, or north side, of these lots borders on William Way, a street running generally east and west with an outlet onto Keller Drive which forms the eastern boundary of the subdivision and which, in turn, connects with Toledo Street to the south at a T-intersection. Presently, Toledo Street is accessible from Park Manor Estates only by way of Keller Drive.

Shortly before the formal plat and dedication of

Park Manor Estates, the then owners of that property created an easement over what is now the extreme south 16 feet of the properties in question. In other words, it covers a strip of ground lying at the extreme south, or rear side, of the properties, immediately adjacent to Toledo Street. The grantees of that easement were the City of Sidney, Kansas-Nebraska Natural Gas Company, Inc., Wheat Belt Public Power District, and Sidney Community T.V. Company. Its purpose was for the "construction, reconstruction, replacement, removal, maintenance, and operation of electrical lines, cable lines, natural gas mains, sewer lines and other utilities incident to the business of the Grantee . . . ." It provided for ingress and egress across the property described for the purposes named above, and further provided that "Except for the ingress and egress granted to the Grantee, there shall be no ingress or egress over the above described Easement by any parties other than the Grantee without the express written consent of the Grantor and the Grantee."

The evidence presented by the plaintiffs suggested that everyone concerned understood that there was no right of access to Toledo Street from the affected properties without getting the required permission. As a matter of fact, all of the lot owners have constructed a fence which runs along the south end of the lots and separates the easement from the right-of-way on which Toledo Street is located. Their testimony also admitted that there is no requirement that all of the houses face north, away from Toledo Street, but the fact is that all were constructed in that way. One of the plaintiffs did admit in his testimony that the paving of Toledo Street might have benefited the lots in question a little, particularly because of less dust. There was evidence adduced that the municipal park was located on the south side of Toledo Street, which drew a great deal of

traffic, and that in the years before the street was paved, the dirt street created a lot of dust.

Testifying in behalf of the defendants was the project engineer on this paving job. He stated that the total cost of the paving project was approximately $62 per foot, so that a full assessment for a lot bordering on the street would be $31 plus, whereas the lots in Park Manor Estates were assessed but $15.53 per foot. He explained this as simply a matter of fairness, because these were double-fronted lots, i.e., there was a paved street at both the front and rear. This was not an unusual procedure in making assessments, according to him, and he pointed to other areas within the city of Sidney where only one-quarter assessments were made on double-fronted lots.

However, this witness gave as his opinion that the assessments recommended by him and adopted by the city were in proportion to the special benefits to the lots, and, as a matter of fact, the benefits exceeded the amount of assessments. He described the benefits in this particular situation as resulting in an all-weather road to travel in and out of the area; the elimination of dust caused by traffic; the establishment of drainage within the area; the establishment of a uniform grade in the adjacent area, allowing proper landscaping; the elimination of borrow pits, which are a trap for casual water; reduced noise; and modernization.

We believe the record fully supports a conclusion that the lots in question received substantial benefits from the paving of Toledo Street. Whether the amount settled on was correct we need not and may not determine because that question is not properly before us. What we do determine is that the record fails to support a conclusion that the property in question was not and could not be specially benefited by the paving project. Therefore, the landowner plaintiffs have failed to meet their burden of proving

the invalidity of the special assessments, and such assessments shall stand.

The judgment of the District Court is reversed and the cause is remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

WHITE, J., participating on briefs.