BRIAN T. BENNETT AND MARY JO BENNETT, HUSBAND AND WIFE, ET AL., APPELLANTS, V. BOARD OF EQUALIZATION OF CITY OF LINCOLN, NEBRASKA, AND CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEES.

507 N.W.2d 514

Filed October 26, 1993.   No. A-93-606.

J. Michael Rierden for appellants.

William F. Austin, Lincoln City Attorney, and Don W. Taute for appellees.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

SIEVERS, Chief Judge.

This is an appeal from an order of the district court for Lancaster County, Nebraska, affirming special assessments levied against the appellants' properties by the Lincoln City Council, sitting as the Board of Equalization of City of Lincoln. The board of equalization levied assessments on the appellants' properties for benefits conferred on those properties as a result of a paving improvement along a portion of South 27th Street.

On December 16, 1987, the City of Lincoln created paving district No. 2542 by ordinance No. 14807. The ordinance designated properties to be benefited as a result of the paving of South 27th Street between Old Cheney Road and the southern boundary of Southern Hills 1st Addition. The benefited properties generally are within an area approximately 200 feet on either side of the centerline of South 27th Street, as well as six properties off the west side of South 27th Street on Norman Circle. The ordinance further provided that the cost of paving South 27th Street should be assessed against the properties benefited within paving district No. 2542 in proportion to the benefits, not exceeding the cost of the improvement.

The paving improvement was completed by November 1988. The city council passed an assessment resolution on December 4, 1989, assessing a portion of the paving cost against properties within paving district No. 2542. The assessment resolution proposed a total assessment of $80,726.12 at the rate of $.09 per square foot to all the properties within paving district No. 2542, including the appellants' properties. The total cost for constructing the paved road was $438,134.62. The City of Lincoln subsidized $357,408.50 of that amount. Therefore, the amount assessed to properties in the paving district represented

18.4 percent of the total cost of the paving improvement.

On December 11 and 18, 1989, the city council, sitting as the board of equalization, held a hearing to consider the proposed special assessments. Numerous property owners within paving district No. 2542 voiced objections to the proposed assessments. The board of equalization subsequently overruled the objections, and the assessments were levied in the amounts set forth in the assessment resolution.

The property owners appealed the decision of the board of equalization to the district court for Lancaster County, pursuant to Neb. Rev. Stat. § 15-1201 et seq. (Reissue 1991). After a hearing, the district court ruled in favor of the appellants. However, the district court sustained the appellees' motion for new trial. After a new trial, the district court affirmed the decision of the board of equalization. After the property owners' motion for new trial was denied, this appeal followed.

On appeal to this court, the appellants' assignments of error can be summarized into the following: (1) that the district court erred in not finding that a Lincoln municipal ordinance precluded the assessments against their properties; (2) that the district court should not have relied on the district court for Lancaster County's decision in Pester v. Board of Equal. of City of Lincoln, Lancaster County District Court, docket 355, page 52; and (3) that the district court erred in finding that the appellants received benefits beyond those enjoyed by the general public.

In an appeal from a levy of a special assessment, the party contesting the assessment has the burden of showing invalidity. *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993). In all appeals of such actions, an appellate court must, upon review de novo on the record, retry the issues of fact involved and reach an independent conclusion as to the findings required under the pleadings and all the evidence, without reference to the conclusion reached by the district court or the fact that there may be some evidence in support thereof. *Id.*

The appellants in this case are various property owners in Chez Ami Knolls 3d & 5th Additions, Sevenoaks 1st Addition, and Southern Hills 1st Addition, all subdivisions that abut

South 27th Street. The platting ordinances of these subdivisions required that the owners of lots that directly abut South 27th Street relinquish the right of direct vehicular access to South 27th Street. The appellants argue that since they were required to relinquish direct access to South 27th Street, they should not be required to pay any of the cost associated with the paving of the street, pursuant to the Nebraska Supreme Court's decision in *Briar West, Inc. v. City of Lincoln*, 206 Neb. 172, 291 N.W.2d 730 (1980), and pursuant to Lincoln Mun. Code. § 26.11.110 (1989).

In *Briar West, Inc.*, pursuant to a platting ordinance, a subdivider was required to relinquish the right of direct vehicular access from all lots abutting South 27th Street and Old Cheney Road. The subdivider was also required to pay " 'the equivalent cost of local street paving installation' for the future installation of widened paving on both of the streets [South 27th Street and Old Cheney Road]" by immediate early payment or by furnishing a bond. 206 Neb. at 174, 291 N.W.2d at 731. The developer of the land filed a declaratory judgment action seeking a declaration that it was not required to pay the local street paving cost. The Nebraska Supreme Court determined that the city had no power to assess the cost of local street installation to be used to pay for future street widening:

> The city has not attempted in any way to link the required payment to special benefits conferred upon the subdivision by the future improvement of Old Cheney Road and South 27th Street. Nor is there any indication that any special benefits would, in fact, arise from such future improvement.
>
> . . . .
>
> . . . No case has been cited under either rule in which a court has held it to be reasonable for a city to require a developer to relinquish all right of direct access to an arterial street from all abutting lots in the subdivision and, at the same time, pay the costs of future widening and paving of the street to which access has been restricted. The unreasonableness of such a requirement is accentuated in the present case by the fact that no time limit is specified for the widening and paving of the streets

nor, indeed, is there any absolute requirement that it be done at all.

*Id*. at 179-80, 291 N.W.2d at 733-34.

Section 26.11.110 sets forth a subdivider's responsibilities for improvements in collector and major streets. After the *Briar West, Inc.* decision, this ordinance was amended to provide in relevant part:

The subdivider shall be responsible for:

(a) The equivalent cost of local street paving in a major street when:

(1) The subdivision abuts such major street;

(2) The major street is within the city limits or will be annexed with final plat approval; and

(3) Improvement of the major street is planned in the six-year capital improvements program; provided, however, no payment shall be required when individual lot access to such major street has been relinquished.

The appellants argue that since the original developers of their subdivisions were required to relinquish direct access to South 27th Street and consequently were not required to pay the equivalent cost of local street paving pursuant to § 26.11.110, they also should not be required to pay the cost associated with the paving. The appellants acknowledge that § 26.11.110 and the *Briar West, Inc.* decision deal only with conditions for *subdividers* seeking approval for subdivisions. The appellants argue, however, that it was the intent of the Nebraska Supreme Court in *Briar West, Inc.* to extend the proposition not only to subdividers, but to their successors in interest. However, the appellants fail to support this argument in their brief, nor do we find that notion in *Briar West, Inc.* ourselves. While *Briar West, Inc.* and § 26.11.110 deal with conditions on subdividers seeking approval for subdivisions, neither addresses the different issue of assessment for special benefits conferred on property owners by a public improvement after the creation of the subdivision. *Briar West, Inc.* involved a present assessment for future paving which may or may not have conferred special benefits. Thus, *Briar West, Inc.* is clearly distinguishable from this case.

■ Special assessments are charges imposed by law on land to

defray the expense of a local municipal improvement on the theory that the property has received special benefits from the improvement in excess of the benefits accruing to property or people in general. *North Platte, Neb. Hosp. Corp. v. City of North Platte*, 232 Neb. 373, 440 N.W.2d 485 (1989); *Nebco, Inc. v. Speedlin*, 198 Neb. 34, 251 N.W.2d 710 (1977). The foundation of the power to levy a special assessment for a local improvement is that the benefits conferred on the owners of property in the assessment district are different from the general benefits which the owners enjoy in common with other citizens of the community. 14 Eugene McQuillin & J. Jeffrey Reinholtz, The Law of Municipal Corporations § 38.02 (rev. 3d ed. 1987). "Accordingly, it is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is especially benefited." *Id.* at 22.

Neb. Rev. Stat. §§ 15-701 through 15-759 (Reissue 1991) authorize cities of the primary class, such as Lincoln, to wholly or partially assess, proportionate to benefits, property specially benefited by public improvements. It is therefore clear that the City of Lincoln had the power to specially assess the properties in this case if the property owners received benefits above those received by the general public.

In the present case, the property owners argue that the special assessments should not have been levied against them because they did not receive any benefits from the paving improvement above those enjoyed by the general public. However, the property owners do not argue, nor did they present any evidence, that if they did receive benefits, the amount of the assessments levied against them was excessive.

There is a presumption of validity of local improvement assessments. 14 McQuillin & Reinholtz, *supra*, § 38.36; *Brown v. City of York*, 227 Neb. 183, 416 N.W.2d 574 (1987); *Bitter v. City of Lincoln*, 165 Neb. 201, 85 N.W.2d 302 (1957). In the present case, the City of Lincoln does not have the burden of proving that the special assessments were valid. Rather, the property owners have the burden of establishing their invalidity. See, *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993); *Brown v. City of York, supra*; *Bitter v. City*

*of Lincoln, supra.*

The six property owners testifying at the district court level generally disputed that they received any benefits from the paving of South 27th Street. In summary, the property owners testified that dust was not a problem prior to the paving of the street because any dust was generally caused by the large amount of construction occurring in the area. The property owners testifying also complained that traffic increased dramatically on the street after paving was completed. Several property owners also testified that rather than improving drainage flow, the paving of the street created more severe drainage problems. One property owner testified that his home decreased in value after South 27th Street was paved, due to increased traffic.

On behalf of the appellees, Bruce Michaelson, deputy city engineer in charge of design for the City of Lincoln, testified that in his opinion, the paving conferred benefits on the property owners in the form of dust reduction, a more aesthetically pleasing appearance, drainage improvements, and easier access for emergency vehicles. Michaelson also testified with regard to the improved drainage system that accompanied the paving improvement. Michaelson testified that when the gravel street was paved, the ditches alongside the street were filled in, and additional storm sewer pipe and inlets were installed.

Richard Haden, city traffic engineer for the City of Lincoln, testified that the traffic volume on South 27th Street increased from 485 vehicles per day when the road was unpaved to 3,600 vehicles per day by March 1991. H. Lee Becker, an engineer with E. A. Engineering Science and Technology, testified concerning the reduction of dust in the area after the road was paved. Becker testified that given the quantifiable data of speed limit, traffic volume, truck traffic, and average silt content in a gravel road as compared to a paved road, the dust along the relevant portion of South 27th Street was reduced to one-seventh of what it had been prior to the paving, despite a dramatic increase in traffic volume.

In *Reiser v. Hartzler*, 213 Neb. 802, 331 N.W.2d 523 (1983), several property owners sought to have declared null and void

special assessments levied against their properties as the result of the paving of a street. The district court found that the special assessments were illegally assessed and levied, since the " '[b]enefits to plaintiffs appear to the Court to be little, if any, greater than to the public at large.' " *Id*. at 803, 331 N.W.2d at 524. The road paved by the city in *Reiser* bordered the rear side of the plaintiffs' properties. All of the properties faced north, away from the paved street, and all of the property owners had constructed a fence along the south end of their lots. The project engineer for the paving job in *Reiser* testified that the properties in that case were only assessed one-quarter of the total cost of the paving project as a matter of fairness. The engineer stated that it was not an unusual procedure for the city to make assessments in this amount when double-fronted lots (paved street at both the front and rear) were assessed. The engineer further testified that in his opinion, the assessments levied against the properties were in proportion to the special benefits to the lots. He further testified that in his opinion, the special benefits exceeded the amount of the assessments. The engineer described the benefits received by the lots as the following:

> all-weather road to travel in and out of the area; the elimination of dust caused by traffic; the establishment of drainage within the area; the establishment of a uniform grade in the adjacent area, allowing proper landscaping; the elimination of borrow pits, which are a trap for casual water; reduced noise; and modernization.

*Id*. at 806, 331 N.W.2d at 526. On appeal, the Nebraska Supreme Court reversed the finding of the district court, holding that the record supported a conclusion that the property owners received substantial benefits as a result of the paving improvement. The Nebraska Supreme Court did not reach the question of whether the amount of the assessments was correct, as that question was not properly before the court, since the proceeding was a collateral attack, which cannot contest excessiveness. Since this is a direct appeal from the board of equalization, the amount of the assessments, as well as their validity, is before us.

It is a question of fact whether a property which has been

specially assessed has benefited or will benefit from an improvement project. *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993). "[V]alidity of the assessments is aided by the presumption of law that all real estate is benefited to some degree from the improvement of a street or alley on which it abuts or from a like improvement made in a district of which the property assessed is a part." *Bitter v. City of Lincoln*, 165 Neb. 201, 209, 85 N.W.2d 302, 308 (1957). "There is a presumption of benefit to all property abutting on a street to be improved." 14 McQuillin & Reinholtz, *supra* at § 38.36 at 159.

Given the presumption of validity, our de novo review of the record in this case indicates that the appellants have not met their burden of showing the invalidity of the special assessments. The facts indicate that the property owners were benefited by the paving improvement. The City of Lincoln has designated 27th Street as a major arterial street. Therefore, all citizens of the City of Lincoln benefit from the paving of this street. However, it is also true that the property abutting the paved improvement received special benefits beyond those received by the general public. While the appellants did not have the benefit of direct access from their individual lots to South 27th Street, the appellants did receive clear benefits from the paving improvement in the form of dust reduction, improved drainage, and appearance.

With regard to the calculation of the amount of the special assessments levied against the properties in this case, we note that there is no method for ascertaining benefits to property resulting from a public improvement provided in any legislation applicable to cities of the primary class, such as Lincoln. However, with regard to calculating special assessments, the Nebraska Supreme Court has previously stated:

> The basis and justification for a special assessment are benefits to the property affected. An assessment may not be arbitrary, capricious, or unreasonable but the law does not require that a special assessment correspond exactly to the benefits received. Precise accuracy is not required and the determination of the extent of benefits must be committed to some tribunal. Legislation has delegated it to the city council in its capacity as a board of equalization

after notice to the property owner. Benefits capable of easy demonstration and mathematical exactness are not necessary to support an assessment. The most any officer or any tribunal can do in this regard is to estimate the benefits to each tract of real estate upon as uniform a plan as may be in the light afforded by available information.

*Bitter v. City of Lincoln*, 165 Neb. at 208-09, 85 N.W.2d at 307-08. The amount of a special assessment cannot exceed the amount of benefits conferred on the property assessed. *Brown v. City of York*, 227 Neb. 183, 416 N.W.2d 574 (1987). See § 15-701.02. Absent evidence to the contrary, however, it will be presumed that the amount of a special assessment was arrived at with reference only to the benefits which accrued to the property affected. *Brown v. City of York, supra*; *Bitter v. City of Lincoln, supra*.

Bruce Michaelson, deputy city engineer in charge of design for the City of Lincoln, testified that the special assessments levied against the properties in paving district No. 2542 were calculated using the square-foot method of assessment. Michaelson testified that this method was used because he felt it was the fairest method of assessing the property. Michaelson further testified that in the past, the City of Lincoln had used the square-foot method of assessment when assessing property benefited by the paving of arterial streets. The formula used is that the estimated cost of construction is reduced by one-half as credit for existing adjacent paving; one-third of the remainder is then deducted for the lack of direct vehicular access from the assessed property to the paved road. The remaining portion of the estimated cost is divided by the total square footage within the assessment area to arrive at a square-foot assessment rate. In this case, the formula yielded an assessment to property within the paving district at $.09 per square foot.

The property owners in this case failed to present any evidence that the amount of the special assessments levied against their properties exceeded the amount of benefits conferred on their properties as a result of the paved improvement. Therefore, using *Brown*, we presume that the amount of the special assessments was arrived at with reference only to the benefits which accrued to the properties within the

paving district and was not excessive.

Our de novo review of the record in this case, without reference to Pester v. Board of Equal. of City of Lincoln, Lancaster County District Court, docket 355, page 52, supports the district court's decision in this case. Therefore, we need not discuss the property owners' assignment of error with regard to the district court's allegedly erroneous reliance on that case.

In conclusion, we find that the property owners have received special benefits beyond those accorded the general public, primarily by dust reduction and improved drainage. The property owners failed to show that the special assessments levied against their properties were invalid or that they were in excess of benefits conferred on them. Therefore, the judgment of the district court which upheld the decision of the board of equalization is affirmed.

AFFIRMED.

WRIGHT, Judge, dissenting.

I respectfully dissent from the finding of the majority that the property owners have received special benefits, by dust reduction and improved drainage, beyond those accorded the general public and that the property owners failed to show the special assessments levied against their properties were in excess of the benefits conferred on them.

The properties in question are within 200 feet of the centerline of South 27th Street from Old Cheney Road to the southern boundary of Southern Hills 1st Addition. The deputy city engineer testified that the formula to determine the special assessments was to reduce the estimated construction cost by one-half as a credit for existing adjacent paving and to deduct one-third of the remainder of that amount for lack of direct vehicular access to the paved road. The remaining portion of the estimated cost was divided by the total square footage within the assessment area to arrive at an assessment per square foot. This amount was considered the amount of special benefits the owners received beyond those accorded the general public.

Our review is de novo on the record, and we retry the issues of fact and reach an independent conclusion as to the findings

of fact without reference to the conclusion reached by the district court. *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993). The theory of a special assessment is to defray the expense of a municipal improvement to property which has received benefits greater than the benefits to the public in general. *North Platte, Neb. Hosp. Corp. v. City of North Platte*, 232 Neb. 373, 440 N.W.2d 485 (1989).

The majority correctly states that the parties whose properties were assessed have the burden to establish that the assessments were invalid. Here, six property owners disputed the benefits and testified that dust was not a problem and that traffic increased dramatically after the paving was completed. One owner testified that the value of his home decreased by $3,000 because of the increased traffic. Several owners testified that the paving created more severe drainage problems. A witness for the appellees testified that paving reduced the dust to one-seventh of the amount it had been prior to paving and that the traffic volume on South 27th Street had increased significantly.

What I find of great significance is the testimony of the city traffic engineer. He stated that prior to the paving, 485 vehicles per day traveled on the street. After the road was paved, traffic increased to 3,600 vehicles per day. This is an increase in the amount of traffic of 742 percent. It represents one car every 24 seconds every hour of the day. Obviously, there are more cars at certain times of the day and fewer cars at other times. The majority failed to consider the burden to the property owners of this sevenfold increase in traffic volume.

Thus, I believe that when all facts are considered, the only issue is whether the benefits received by settling the dust exceed the obvious burden of the increase of over seven times the amount of traffic to owners of properties that are located 200 feet from the center of the street. The amount of a special assessment cannot exceed the amount of benefits conferred on the property assessed. *Brown v. City of York*, 227 Neb. 183, 416 N.W.2d 574 (1987). Keeping in mind that 27th Street is acknowledged to be a major arterial that now links with Interstate 80 to the north, my independent factual conclusion based upon the evidence not in conflict is that the burden of the

increased traffic greatly exceeds any benefits to the property owners in the form of dust reduction and drainage and that the overall benefit was only to the general public of the City of Lincoln. A board of equalization's valuation of benefits conferred is not limited to the present use made of improvements, but extends to the use which might reasonably be made of the improvements in the future. *Id.* The value of these properties will, in my opinion, decrease as the amount of traffic increases with the future use of South 27th Street.

I would reverse, and remand with directions to vacate the special assessments.