H. Lee Grube, appellee, v. City of Ogallala, Nebraska,
and Paul W. Fisher, city clerk and city treasurer,
appellants.

392 N.W.2d 380

Filed August 15, 1986.   No. 85-254.

Paul D. Merritt, Jr., of McGinley, Lane, Mueller, O'Donnell & Merritt, P.C., for appellants.

Gary J. Krajewski of McQuillan & Spady, P.C., for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Grant, JJ.

Grant, J.

This is an appeal from the district court for Keith County, Nebraska. The plaintiff-appellee, H. Lee Grube, brought suit against the defendants-appellants, the City of Ogallala, Nebraska, and Paul W. Fisher, the city's clerk and treasurer, seeking to have special assessments levied against his property by the defendants be declared null and void. Trial was held to the court on February 5, 1985. The trial court entered its order finding for Grube and against the defendants, declaring that

the special assessment was null and void and enjoining the defendants from collecting the assessment. The defendants have timely appealed. For the reasons stated hereinafter we affirm.

The record shows the following. Grube moved to Ogallala in 1971. On September 1, 1978, Grube purchased a quarter section of dry farmland located in Keith County, Nebraska. This property is a "short" quarter, consisting of approximately 140 acres. It is bordered on the north by U.S. Highway 26 and on the east by Highway 26 and state Highway 61. It is bordered on the south and west by county roads. Grube's land is adjacent to and just north of the city, and not within the city's corporate limits. The south line of Grube's property is contiguous to the north line of the city limits. Aerial photographs show that immediately south of Grube's property, and within the city limits, mobile homes are located, each situated on an individual lot. A motorboat dealership within the city limits appears to be located adjacent to the southeast corner of Grube's property. Areas immediately adjacent to the Grube property to the north, east, and west are open farm country.

Grube testified that he purchased this property principally to invest in farmland, although he was not a farmer. Grube had been in the business of selling irrigation equipment in southwest Nebraska since 1971. In the spring of 1979 Grube installed a center pivot irrigation system on this property, at a cost of $55,000. At the time, Grube was coowner of an irrigation equipment and implement dealership in Ogallala. He testified that one of the reasons he installed the irrigation system was to use the land as a demonstration site for ranchers to observe new irrigation systems which Grube sold. Grube also testified that he has used the land primarily for agricultural purposes since he purchased it. Grube continues to lease his land and receives a part of the crop as rental.

In the summer or fall of 1980, Grube was approached by a Fred Wier, who inquired if Grube would consider selling a portion of his land to Wier for a business which Wier was considering establishing. Grube then contacted the city's zoning administrator, who suggested that Grube draw up a plat and present it to the city planning commission. Grube hired a local

surveyor to prepare a preliminary plat. The plat consisted of ten 1-acre lots in the southeast corner of Grube's land. The platted area had been zoned C-2 (highway business) before Grube submitted his plat. Grube's suggested development use was something similar to an industrial park.

On October 7, 1980, Grube appeared before the city's planning commission. At that meeting Grube discussed his proposed subdivision. The minutes of the meeting show that Grube described his plan as "tentative." Either at the planning commission meeting or shortly thereafter, Grube submitted a letter to the planning commission concerning the supplying of water and sewer to his proposed subdivision and his commitment to use city water and sewer when they became available.

The record before us does not disclose exactly what action was taken by the commission at this meeting, but the minutes of the October 7 meeting show that "Mr. Grube was told he would need six (6) copies of his preliminary plan. . . . The reason he will need six (6) copies is because he is outside of the city limits. After these are received, a public hearing will be directed."

Sometime after the planning commission meeting, in late 1980, Grube testified that he decided it was not "economically feasible" at that time to proceed with the subdivision, mainly due to the costs associated with fill dirt and curbing and guttering the streets. Grube testified that in order to properly irrigate the remaining portion of his land once the subdivision was in place, he would have to remove two "towers" on his irrigation pivot system, which would have eliminated approximately 43 acres of irrigated land. He did not do anything further concerning the preliminary plat, nor did the planning commission.

On July 27, 1982, the city, by its city council, passed and approved ordinance No. 772, which created water extension district No. 1982-2 of the City of Ogallala, Nebraska. The northern boundary of the district extends 100 to 117 feet into the southernmost portion of Grube's land, and covers almost all the land comprising the entire southern boundary of Grube's land. The district itself essentially consists of 10-inch water main which was designed and installed for existing residential

use, projected residential and commercial use, and for fire flows. Reed Miller, the city's consulting engineer, testified the standard size for such a water main is 6 inches, but the district's was "oversized" to "meet future needs." The city, in fact, paid certain costs associated with this "oversizing."

On June 21, 1983, the city council, sitting as the board of equalization, passed resolution No. 464, after receiving a written objection and hearing arguments from Grube's counsel. This resolution established the special assessments for the district. The assessment schedule was prepared based upon a "front footage" formula. See Neb. Rev. Stat. § 16-707 (Reissue 1983). Although there is a total of 12,027.12 frontage feet within the district, the city properly assessed only 8,366.54 feet. Of this amount, 2,241.52 feet belong to Grube, which represents 26.8 percent of the front footage assessed. The total amount assessed as a result of the district was $44,698.37. Grube was assessed $11,815.98, which represents 26.4 percent of the total assessed cost.

Subsequent to the passing of resolution No. 464, Grube did not file any written objection or post a $200 bond with the city clerk as required by Neb. Rev. Stat. § 19-2423 (Reissue 1983) within 10 days of the date of levying the assessment. Grube did not file his petition on appeal in the district court within 30 days from the date of the levy of the special assessment. See Neb. Rev. Stat. § 19-2425 (Reissue 1983). Therefore, Grube's attack on the special assessment levied was collateral in nature.

Since this action is a collateral attack upon the assessment, the issues which Grube may present are limited. A property owner may collaterally attack a special assessment only for fraud, actual or constructive, a fundamental defect, or a want of jurisdiction. *Nebco, Inc. v. Speedlin*, 198 Neb. 34, 251 N.W.2d 710 (1977). Grube does not allege any fundamental defect or want of jurisdiction in the city council action but alleges in his petition that "the Defendants arbitrarily and capriciously levied an assessment of $11,815.98 against the real estate owned by Plaintiff . . . ." To sustain a collateral attack on a special assessment, it is necessary that the evidence support a determination that in fact the property in question was not and could not be specially benefited by the particular improvement.

*Reiser v. Hartzler*, 213 Neb. 802, 331 N.W.2d 523 (1983). A property owner who attacks a special assessment as void has the burden of establishing its invalidity. *Burlington Northern, Inc. v. City of McCook*, 204 Neb. 543, 283 N.W.2d 380 (1979). A collateral attack upon a special assessment is a proceeding in equity, which this court reviews de novo on the record. *Reiser v. Hartzler, supra; Nebco, Inc. v. Speedlin, supra.*

The appellants have assigned five errors, each raising in some form a question as to the sufficiency of the evidence to support the trial court's ultimate finding that Grube's property was not and could not be benefited by the water district. The facts in this case show that the property in question was not and could not be benefited.

In its order the district court found as follows:

The plaintiff [Grube] has shown by sufficient evidence that his property could not be benefited by the Water Extension District. His land is agricultural, has been used for agriculture, and will continue to be used for agriculture. The property has upon it a center pivot irrigation system which has been in operation for some time. The Court recognizes that at one time the plaintiff looked into subdivision of his property. However, the uncontradicted testimony of the plaintiff was that subdivision was impractical, too expensive, and would not be undertaken by him in the future. The only testimony presented by the defendant [city] relating to development of the plaintiff's tract of land in the future was the testimony of Reed Miller [city's consulting engineer], who indicated that some time in the future this portion of town would develop. However, he was unable to put such development within a time frame any more exact than the next 50 years.

We have reviewed the record de novo, and we agree with the district court's findings. There is nothing in the record which shows that Grube has used or will use the district's water to irrigate his crops or that the district was created in part or whole as a result of Grube's initial inquiry in subdividing his property. Grube's center pivot operation utilized a well on the Grube property. The possibility of the city's growth into the area of

Grube's farm property, thus making a subdivision of his property feasible, was remote. The city's consulting engineer testified that he was not aware of any plans for growth in the area, and when asked when the city's growth was going to reach Grube's quarter section, the engineer testified, "Within the next fifty years."

It is a question of fact whether or not a property which has been specially assessed has or will benefit from an improvement project. See, *Reiser v. Hartzler, supra*; *Burlington Northern, Inc. v. City of McCook, supra*; *Nebco, Inc. v. Speedlin, supra*.

In this case the physical facts are such that Grube's property was not and could not be specially benefited from the improvements of the district within the foreseeable future. Where it is alleged and proved that the physical facts are such that the property was not and could not be specially benefited, the levy may be held to be arbitrary, constructively fraudulent, and therefore void. *Nebco, Inc. v. Speedlin, supra*. The district court was correct in determining that "the action of the City of Ogallala was constructively fraudulent." The order of the district court is affirmed.

AFFIRMED.