FOOTE CLINIC, INC., A NEBRASKA CORPORATION, APPELLANT, V. CITY OF HASTINGS, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

580 N.W. 2d 81

Filed June 19, 1998.    No. S-96-587.

Arthur R. Langvardt, of Langvardt & Valle, for appellant.

Bradley J. White, of Helmann, Sullivan & White, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WHITE, C.J.

The Nebraska Court of Appeals affirmed the judgment of the district court for Adams County determining that the Hastings Downtown Business Improvement District (BID) was validly created by appellee, City of Hastings, Nebraska, pursuant to the Business Improvement District Act, Neb. Rev. Stat. § 19-4015 et seq. (Reissue 1997). See *Foote Clinic, Inc. v. City of Hastings*, 97 NCA No. 47, case No. A-96-587 (not designated for permanent publication). We granted further review, and we reverse and remand.

In March 1986, acting on the recommendation of its business improvement district board and its planning and zoning commission, the Hastings City Council declared its intention to establish the BID by adopting resolution No. 1010. In April 1986, after notice and a public hearing, the Hastings City Council passed ordinance No. 2964 creating the BID.

Since 1990, appellant, Foote Clinic, Inc., has been the owner of a commercial building located within the BID. In the years 1993 through 1995, Paul Powers, president of the clinic, filed written objections to the assessments levied against the clinic because, in part, the clinic was not receiving any type of benefit from the assessments. In addition, Powers appeared before the Hastings City Council to protest the assessments levied

against the clinic. However, the clinic never directly appealed the findings of the city council or the special assessments levied against it. The clinic now challenges the creation and formation of the BID on the grounds that the resolution and ordinance adopted by the Hastings City Council did not sufficiently set forth the improvements to be made within the BID, the estimated costs of these improvements, and the method of special assessment to be applied in the BID.

The resolution adopted by the Hastings City Council, when considering the improvements to be made in the BID, simply restated the uses authorized by the act. The resolution estimated a cost of $49,000 for the employment of a "Coordinator-Director" and "the creation and implementation of a plan for improving the general architectural design of the public areas" in the BID. The resolution proposed a special assessment system whereby

> [a]ll real property located in the District, zoned for commercial or industrial use, shall be divided into three classes, as set forth in the attached map. The amount of the special assessment for each class of property shall be calculated in accordance with the following formula:
>
> Assessed value of individual property divided by total assessed value of all taxable property in that class of property times total special assessment for that class of property equals individual special assessment.

The ordinance, when considering the improvements to be made, provided for the following:

> a) Employment of a Coordinator/Director for the public activities of the District.
>
> b) Creation and implementation of a plan for improving the general architectural design of public areas in the District.
>
> c) The development of any public activities and promotion of public events in the District area.
>
> d) Improvement of any public place or facility in the District area, including landscaping and plantings.
>
> e) Construction or installation of lighting, benches, or other seating furniture and any useful or necessary public improvement.

f) Any other project or undertaking for the betterment of the public facilities in the District area, whether the project be capital or noncapital in nature.

The ordinance does not specify the costs of the improvements, nor does the act so require. The method of assessment repeats the formula stated in the resolution.

The clinic asserts the Court of Appeals erred in holding that (1) the city's resolution and ordinance creating the BID set forth all required information as to the method of special assessment to be employed, (2) the city was authorized by §§ 19-4015 through 19-4038 to divide properties within the district into separate classes for purposes of levying special assessments, and (3) the resolution and ordinance creating the BID complied with the authorizing statutes even though not specifying the projects to be undertaken by the BID and their estimated costs.

A property owner may collaterally attack a special assessment if such attack is limited to a challenge based on fraud, actual or constructive; a fundamental defect; or want of jurisdiction. *North Platte, Neb. Hosp. Corp. v. City of North Platte,* 232 Neb. 373, 440 N.W.2d 485 (1989). The property owner attacking the validity of a special assessment as void has the burden of establishing its invalidity. *NEBCO, Inc. v. Board of Equal. of City of Lincoln,* 250 Neb. 81, 547 N.W.2d 499 (1996).

An action for declaratory judgment is sui generis, and whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Main Street Movies v. Wellman,* 251 Neb. 367, 557 N.W.2d 641 (1997). A collateral attack on a special assessment is a proceeding in equity, which an appellate court reviews de novo on the record. *North Platte, Neb. Hosp. Corp. v. City of North Platte, supra.* In all appeals of such actions, the appellate court must retry the issues of fact involved and reach an independent conclusion as to the findings required under the pleadings and all the evidence, without reference to the conclusion reached by the district court or the fact that there may be some evidence in support thereof. *Iverson v. City of North Platte,* 243 Neb. 506, 500 N.W.2d 574 (1993).

We have continuously held that the power and authority delegated to municipalities to construct improvements and levy

special assessments for their payment is to be strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority and the manner of exercise thereof is resolved against the city and in favor of the taxpayer. See, *Iverson v. City of North Platte, supra*; *Garden Dev. Co. v. City of Hastings*, 231 Neb. 477, 436 N.W.2d 832 (1989); *Turner v. City of North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979); *Matzke v. City of Seward*, 193 Neb. 211, 226 N.W.2d 340 (1975), *overruled on other grounds, First Assembly of God Church v. City of Scottsbluff*, 203 Neb. 452, 279 N.W.2d 126 (1979); *Chicago, St. P., M. & O. Ry. Co. v. City of Randolph*, 163 Neb. 687, 81 N.W.2d 159 (1957).

The legislative intent is the cardinal rule in the construction of statutes. *Matzke v. City of Seward, supra.* In construing a statute, the legislative intent is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately. *Id.*

Although the terminology has evolved from "jurisdiction" to "authority," we have established that a city lacks authority to levy special assessments when the city fails to comply with the requisite statutory steps for authorizing such assessments. See, *Iverson v. City of North Platte, supra*; *Garden Dev. Co. v. City of Hastings, supra*; *North Star Lodge #227 v. City of Lincoln, supra*; *Turner v. City of North Platte, supra*; *Matzke v. City of Seward, supra*; *Campbell v. City of Ogallala*, 183 Neb. 238, 159 N.W.2d 574 (1968); *Sanitary & Improvement Dist. v. City of Ralston*, 182 Neb. 63, 152 N.W.2d 111 (1967); *Chicago, St. P., M. & O. Ry. Co. v. City of Randolph, supra*; *Moss v. City of Fairbury*, 66 Neb. 671, 92 N.W. 721 (1902).

Since the clinic asserts that the substance of the resolution and ordinance does not comply with the act, the outcome of this case rests on determining what a city council is required to include in a resolution of intention to create a business improvement district and the ordinance adopting such a district. Therefore, we turn our focus to those sections of the act which provide the requirements for creating a business improvement

district and set forth the steps authorizing the levy of special assessments for the improvements made within the district.

Initially, the mayor, with the approval of the city council, must appoint a business improvement board. § 19-4021. The board then makes recommendations to the city council for the establishment of a plan or plans for improvements in the business area. *Id.* Once the city council receives the recommendations of the board and the planning commission, the city council may establish one or more business improvement districts by adopting a resolution of intention to establish a district or districts. § 19-4024. The resolution must contain the following information:

> (1) A description of the boundaries of any proposed district;
>
> (2) The time and place of a hearing to be held by the city council to consider establishment of a district or districts;
>
> (3) The proposed public facilities and improvements to be made or maintained within any such district; and
>
> (4) The proposed or estimated costs for improvements and facilities within any district, and the method by which the revenue shall be raised. If a special assessment is proposed, the resolution also shall state the proposed method of assessment.

*Id.*

In May 1979, when § 19-4024 first came into effect, the statute required a city council's resolution of intention to set forth, as stated in subsection (4), only the "method by which the revenue shall be raised." As a result, while construing § 19-4024(4) in *North Star Lodge #227 v. City of Lincoln,* 212 Neb. 236, 322 N.W.2d 419 (1982), we held the city of Lincoln acted prematurely by stating a specific method for applying special assessments in its resolution of intention to establish a business improvement district. We concluded the only proper choice for a city council to make at the resolution stage is between a general license and occupation tax and a special assessment tax. *North Star Lodge #227 v. City of Lincoln, supra.* In response, the Legislature added the following sentence to § 19-4024(4) during the 1983 legislative session: "If a

special assessment is proposed, the resolution also shall state the proposed method of assessment."

After adopting the resolution, the city council must give a notice of hearing by publishing the resolution in a newspaper of general circulation in the city and by mailing a complete copy of the resolution to each owner of taxable property as shown on the latest tax roles. § 19-4025. Following the hearing, the city council may then establish a district by adopting an ordinance stating its intention to that effect. § 19-4029. The ordinance establishing any district or districts must contain the following information:

>   (1) The number, date, and title of the resolution of intention pursuant to which it was adopted;
>
>   (2) The time and place the hearing was held concerning the formation of such district;
>
>   (3) A statement that a business improvement district has been established;
>
>   (4) The purposes of the district, and the public improvements and facilities to be included in such district;
>
>   (5) The description of the boundaries of such district;
>
>   (6) A statement that the businesses and professions in the area established by the ordinance shall be subject to the general business occupation tax or that the real property in the area will be subject to the special assessment authorized by sections 19-4015 to 19-4038;
>
>   (7) The proposed method of assessment to be imposed within the district or the initial rate of the occupation tax to be imposed; and
>
>   (8) Any penalties to be imposed for failure to pay the tax or special assessment.

*Id.*

Once the district is created, "[a] city may levy a special assessment against the real estate located in such district . . . 'for the purpose of paying all or any part of the total costs and expenses of performing any authorized work . . . ." § 19-4030. The total amount of the assessments levied under the act "shall not exceed the total costs and expenses of performing the authorized work." § 19-4033.

The clinic, through its third assigned error, asserts that the resolution and ordinance did not comply with the act because of the city council's failure to specifically set forth the improvements to be made in the BID and the estimated costs of those improvements. We agree with the clinic's assertion that the Hastings City Council's resolution fails to comply with the requirements of the act. A strict construction of § 19-4024(3) and (4) and a thorough consideration of the entire act clearly show the Legislature's intent to provide the persons affected by the creation of a business improvement district with notice of the improvements to be performed, the estimated or proposed costs of such improvements, and an opportunity to protest and terminate any such action. In coming to this conclusion, we pay particular attention to the entire process required by the act.

As stated above, the mayor initially creates a board which makes recommendations for a plan or plans for improvement and then submits recommendations to the city council. When the city council announces its intention to create a business improvement district by passing a resolution stating such, the city council must set forth, among other requirements, the "proposed public facilities and improvements to be made or maintained" within the district and their "proposed or estimated costs." The city council may then establish a district only after giving notice and an opportunity to be heard to those affected.

The aforementioned improvement and cost language, read in conjunction with the notice provisions, clearly indicates the Legislature's intent to require a city council to set forth the proposed improvements and their respective costs in the resolution of intention; otherwise, the notice provisions of the act would become obsolete because those affected would not be able to make an intelligent and informed protest during the hearing phase of the creation of a district. See *City of Mattoon v. Stump*, 414 Ill. 319, 111 N.E.2d 551 (1953) (determining that act's requirements that resolution set forth proposed improvements and costs thereof are jurisdictional; that without compliance, no valid assessment can be made; and that improvements must be so described that property owner can obtain general understanding of what is to be done).

The conclusion that a city council must give notice as to the proposed improvements and their costs finds further support in §§ 19-4031 and 19-4033. The former allows assessments to be levied only for authorized work, and the latter limits the amount of the assessment to equal the cost of the authorized work. In addition, the Legislature amended § 19-4024(4) to require the resolution of intention to include the proposed method of the assessment. When viewed in its entirety, the act clearly contemplates a step-by-step process whereby the persons affected by the creation of the district receive notice of its improvements and costs.

Therefore, when considering resolution No. 1010 of the Hastings City Council in light of § 19-4024(3) and (4) and the entire act read as a whole, we find that the city council failed to properly set forth the proposed improvements and their estimated costs. We hold the creation of the district was improper, the city lacked the necessary authority to levy special assessments due to its failure to comply with the necessary statutory steps required by the act, and any and all assessments arising therefrom are void.

The foregoing analysis being dispositive, we do not reach the clinic's first and second assignments of error. Accordingly, we reverse and remand.

REVERSED AND REMANDED.