REQUESTED BY: Allen Curtis, Executive Director Nebraska Crime Commission
On behalf of the Nebraska Jail Standards Board, you have posed a series of questions to us pertaining to Neb. Rev. Stat. § 47-111
(1998) and § 004.02A of Chapter 2 of the Nebraska Jail Standards, 81 NAC 2, § 004.02A. We will discuss each of your questions separately below.
 BACKGROUND
Neb. Rev. Stat. § 47-111 (1998) provides:
 In every county jail where there is a female prisoner, twenty-four-hour supervision shall be provided by a matron appointed by the county board, whose duty it shall be to have entire charge of the female prisoners, and the board may also in its discretion appoint such matron where there is a sick prisoner or one that is a minor under the age of sixteen. Such matrons shall be under the direction of the sheriff or such other person as may be charged with the administrative direction of the jail, shall take the necessary oath before entering upon the duties of the office, and shall be paid by the board from the county treasury only for the time actually engaged; Provided, that in counties having a population in excess of two hundred thousand inhabitants, a deputy or correctional officer shall be hired by the person whose duty it shall be to have charge of the female prisoners and perform those functions required of a deputy related to such duty, at a salary of not less than five hundred dollars per month, which salary shall be drawn out of the county treasury. Such matron, deputy or correctional officer shall, when required, report to the board or district judges.
In the context of § 47-111, the jail standard contained at 81 NAC 2, § 004.02A provides that "[f]emale employees shall provide around-the-clock supervision of all female inmates housed in a jail facility."
Apparently, a dispute has now arisen over the scope of § 47-111
and 81 NAC 2, § 004.02A in counties having a population in excess of two hundred thousand inhabitants. In particular, you state that Douglas County believes that § 47-111 does not require that a female officer be responsible for around-the-clock supervision of all female inmates in such counties, and that § 47-111 would allow a male staff member in such counties to provide supervision for a female living unit, so long as a female staff member remained available to assist or supervise the male staff member. That dispute precipitated your opinion request to this office.
Question No. 1. "Under 47-111 is cross gender supervision of females allowable in county jails operated by counties having a population in excess of 200,000 inhabitants?"
The initial portion of § 47-111 seems to make it clear that female prisoners in smaller counties in Nebraska are to be supervised full time by a matron or female jailer. In contrast, the second portion of § 47-111 allows a deputy or correctional officer to perform such duties in counties over 200,000 in population. That differing language in the second portion of the statute makes it possible to argue that §47-111 allows a male deputy or correctional officer to supervise female prisoners in larger counties, while smaller counties must use matrons. On the other hand, it also could be argued that the differing language simply reflects a purpose to require that female correctional personnel who supervise female prisoners in larger counties, where there is a division of corrections under the supervision of a correctional administrator,[1] must be designated as deputies or correctional officers. Under the latter interpretation, there would be no legislative intent to change the underlying policy that female prisoners should be supervised by female corrections personnel. We also believe, as discussed in more detail below, that it is unclear whether the language "whose duty it shall be to have charge of the female prisoners and perform those functions required of a deputy related to such duty" in the second portion of § 47-111 modifies "deputy or correctional officer" or "person" in that sentence. As a result, it appears that § 47-111 is ambiguous, and for that reason, it is appropriate for us to consider the legislative history of that statute. Sydow v. City of Grand Island,263 Neb. 389, 639 N.W.2d 913 (2002).
The origin of § 47-111 is found in 1903 Neb. Laws c. 55, § 1, p. 346. That statute provided, in pertinent part:
 (Matron) That hereafter in every and all county jails where there is a female prisoner a matron shall be appointed by the county board, whose duty shall be to have entire charge of the female prisoners, and said board may also, in their discretion, appoint such matron when there is a sick prisoner, or one that is a minor under the age of sixteen. Such matron shall be under the direction of the sheriff, shall take the necessary oath before entering upon the duties of said office, and shall be paid by the board from the county treasury, only for the time actually engaged.
Subsequently, 1919 Neb. Laws, c. 113, § 1, p. 77 made separate provision for larger counties, when the following language was added to what became § 47-111: "Provided that in counties having a population exceeding 125,000 a Matron shall be appointed by the sheriff whose duty shall be to have entire charge of the female prisoners, at a salary of ninety ($90.00) dollars per month, which salary shall be drawn out of the county treasury."
The subsequent change in § 47-111 which has the most pertinence for the current discussion occurred as a result of 1975 Neb. Laws LB 417. LB 417 primarily pertained to a new organizational framework for the correctional system in Nebraska and the construction of a new penitentiary. However, that bill made the following changes to §47-111:
 In every county jail where there is a female prisoner, a matron shall be twenty-four hour supervision shall be provided by a matron appointed by the county board, whose duty it shall be to have entire charge of the female prisoners, and the board may also in its discretion appoint such matron where there is a sick prisoner or one that is a minor under the age of sixteen. Such matrons shall be under the direction of the sheriff or such other person as may be charged with the administrative direction of the jail, shall take the necessary oath before entering upon the duties of the office, and shall be paid by the board from the county treasury only for the time actually engaged; Provided, that in counties having a population in excess of two hundred thousand inhabitants, a matron deputy or correctional officer shall be appointed hired by the sheriff whose duty it shall be to have entire charge of the female prisoners and perform those functions required of a deputy related to such duty, at a salary of not less than one five twenty five hundred dollars per month, which salary shall be drawn out of the county treasury. Such matron, deputy or correctional officer shall, when required, report to the board or district judges.[2]
The legislative history of LB 417 gives some indication of why the term "matron"was deleted from the second portion of § 47-111 and replaced with "deputy or correctional officer" and other language. During the committee hearing on that bill, LaRue Wunderlich, a proponent of the bill, proposed an amendment to the bill and provided the following explanation for that amendment:
 Also, we would like to, on page 24, which is some of the language of the amended section 47-111, we would like this to be brought into compliance with federal guidelines on discrimination on the basis of sex. The Douglas County statutory requirements that the sheriff shall appoint a matron has kept female employees of the sheriff's office to perform (sic) the same duties as a deputy from the opportunity for advancement available for deputies. It has also affected their pay scale which has been different than that for the men. With the passage and enactment of LB782,[3] the problem has been alleviated to some extent. However, we would recommend that in order to bring this section into compliance the following changes should be made: Page 24, line 19 strike "matron," insert "deputy" or "correctional officer"; Line 20 strike "appointed", insert "hired"; and in line 21 strike"entire" and insert after the word "prisoners" "and whatever duties pursuant to those duties required of a deputy."
Committee Records on LB 417, 84th Neb. Leg., 1st Sess. 64-65 (February 25, 1975) (emphasis added). As a result, it appears that the second portion of § 47-111 was amended in 1975 with the intent that female corrections personnel who supervised female prisoners in counties over 200,000 inhabitants should be designated as deputies or correctional officers so that they could obtain equal employment opportunities with male deputies. It does not appear that the statute was amended with an intent to allow male corrections officers in those counties to supervise female prisoners.
The second portion of § 47-111 was also amended by 1984 Neb. Laws LB 394 to substitute "person" for the word "sheriff," so that the statutory language now provides that, in counties over 200,000 inhabitants, "a deputy or correctional officer shall be hired by the person whose duty it shall be to have charge of the female prisoners and perform those functions required of a deputy related to such duty . . . ." As noted above, that statutory language is hardly a model of clarity, and it is difficult to determine whether the second part of the quoted sentence describing various duties modifies "deputy or correctional officer," or whether it modifies "person." However, the legislative history of LB 394 does indicate that the change in language to "person" was enacted to make the statutory language in § 47-111 consistent with other provisions of LB 394 which allowed counties to create Boards of Corrections where corrections administrators were in charge of county jails. Floor Debate on LB 394, 88th Neb. Leg., 2nd Sess. 6515-6516(January 10, 1984) (Statement of Sen. Beutler). Again, that change in LB 394 was not made to specifically allow males to supervise female prisoners.
The legislative intent is the cardinal rule in the construction of statutes. Foote Clinic, Inc. v. City of Hastings, 254 Neb. 792,580 N.W.2d 81 (1998). Based upon the legislative history discussed at length above, it appears to us that § 47-111 was originally enacted to insure that female prisoners were supervised entirely by female corrections officials. We do not believe that subsequent amendments to the bill were intended to bring about a different result, even for counties with a population in excess of 200,000 inhabitants. Therefore, in our view, § 47-111 does not allow cross gender supervision of females in county jails operated by counties having a population in excess of 200,000 inhabitants, and the answer to your first question is "no."
Our conclusion in this instance is supported by 81 NAC 2, § 004.02A. As noted above, that jail standard, which has existed since at least 1994, provides that female jail employees shall provide supervision for all female inmates. Although a construction of a statute by the department charged with enforcing it is not controlling, considerable weight will be given to that construction, particularly when the Legislature has not taken any action to change such an interpretation. Cox Cable of Omaha, Inc. v. Nebraska Department of Revenue, 254 Neb. 598,578 N.W.2d 423 (1998).
Questions No. 2 and 3. "Are female staff required to have `entire charge of female prisoners' in county jails operated by counties having a population in excess of 200,000 inhabitants? If so, would a female supervisor qualify as having entire charge of female prisoners if the unit were staffed by a male staff member?"
Section 47-111 provides that matrons in jails in smaller counties shall have "entire charge of female prisoners," while in counties over 200,000 inhabitants, correctional personnel "have charge of the female prisoners." We assume that your initial question here grows out of that disparate language. We also assume that you wish to know if that disparate language would allow male correctional personnel to supervise female prisoners in counties with over 200,000 inhabitants.
The legislative history of 1975 Neb. Laws LB 417 cited above indicates the word "entire" was taken out of the second portion of §47-111 for the same reason that the word "matron" was also deleted from the second portion of that statute, i.e., so that female corrections personnel who supervised female prisoners in counties over 200,000 inhabitants could be designated as deputies or correctional officers in order to obtain equal employment opportunities with their male counterparts. For that reason, we believe that female staff are still required to have "entire" charge of female prisoners in counties over 200,000 inhabitants in the sense that male staff are not authorized to do so. Similarly, because male staff may not supervise female prisoners, we do not believe that a female supervisor could qualify as having entire charge of female prisoners if the female corrections unit were staffed by a male staff member.
Questions 4 and 5. "With regard to the Attorney Generals opinion issued on November 12, 1982, `Supervision of female prisoners in a jail facility':
 Has the definition of `supervision' contained in that opinion changed with relation to this issue?
 Would having a female officer in the building constitute having female supervision of female inmates even if the female officer were not stationed in the living unit?"
Op. Att'y Gen. No. 287 (November 15, 1982) is the opinion of this office referenced in your fourth question. That opinion pertained to supervision of female prisoners in a jail facility under § 47-111, and we opined that the statutory requirement for "twenty-four-hour supervision" of female prisoners could not be satisfied by the off-premises availability of a matron who could be awakened and summoned to the jail facility within a reasonably brief time between the hours of 12:00 midnight and 7:00 AM. In the course of that opinion, we indicated that the term "supervision" in § 47-111 could be defined as "a critical watching and directing (as of activities or a course of action)."
Absent anything to the contrary, statutory language is to be given its plain and ordinary meaning. Spradlin v. Dairyland Ins. Co.,263 Neb. 521, 641 N.W.2d 634 (2002). The definition which we offered for "supervision" in our Opinion No. 287 appears to comport with the plain and ordinary meaning of that term. We are unaware of any cases or statutes which would require a different definition in the context of § 47-111. Therefore, we do not believe that the definition of "supervision" contained in Opinion No. 287 has changed.
Your second question in this area goes to what specific presence by female correctional personnel is needed to constitute "supervision" or "a critical watching and directing." Jail Standard 004.02B, 81 NAC 2, § 004.02B, requires correctional facility employees to view inmates personally at least once an hour and to document that review. In addition, we understand that the Nebraska Jail Standards Board has administratively considered other activities to be supervisory, including taking prisoners to recreation or visits, dealing with matters of the prisoners' personal hygiene such as distributing razors, and serving meals. If a particular female officer were able to perform all of those tasks and any others considered supervisory by simply being in the building rather than by being assigned to the women's living unit, then It seems to us that having that female officer in the building would constitute having female supervision of female inmates. However, the frequency and nature of such supervisory tasks would obviously make that arrangement very difficult to implement.
Question 6. "Is Nebraska Jail Standards, Title 81, Chapter 2, Personnel, Section 004.02A in conflict with any statute?
In the context of opinion requests from members of the Legislature, we have frequently stated in the past that a general question on the constitutionality of proposed legislation will necessarily result in a general response from this office. Op. Att'y Gen. No. 98040 (September 11, 1998); Op. Att'y Gen. No. 94023 (March 23, 1994). In a similar fashion, your general question involving conflicts between 81 NAC 2, § 004.02A and "any statute" will result in a general response from us, since you did not provide us with any indication as to what specific statutes might be at issue.
81 NAC 2, § 004.02A requires female correctional officers to provide around-the-clock supervision of all female prisoners, and as discussed above, male correctional officers are excluded from that duty. As a result, it seems to us that male correctional officers might take the position that such an exclusion violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. However, there is contrary case authority in that area.
In Tharp v. Iowa Department of Corrections, 68 F.3d 223 (8th Cir. 1995), male prison employees sued the Iowa Department of Corrections for discrimination in violation of Title VII because the Department instituted shift changes so that only female Residential Advisors could staff the women's unit of a mixed-gender minimum security prison. The Eighth Circuit Court of Appeals ultimately affirmed a decision by the federal district court granting summary judgment for the Iowa Department of Corrections. The court stated that a prison employer's reasonable gender-based job assignment policy, particularly a policy which is favorable to a protected class of women employees, will be upheld if it imposes only a "minimal restriction" on other employees. 68 F.3d at 226. The court then determined that the female-only staff assignments at issue imposed a minimal restriction on male correctional employees because those male employees did not suffer termination, demotion or reduction of pay as a result of the shift changes, and because the promotional opportunities of those mail employees were unaffected. 68 F.3d at 226.
In the present case, we believe that 81 NAC 2, § 004.02A imposes a minimal restriction upon male correctional employees because it does not cause them to suffer termination, demotion or reduction of pay. Nor does it generally affect their promotional opportunities. For those reasons, 81 NAC 2, § 004.02A does not appear to be in conflict with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.
In the absence of any additional specific statutes referenced in your opinion request, we are unaware of any other statutes which might be in conflict with 81 NAC 2, § 004.02A.
Question 7. "Is 47-111 or the above mentioned Standard in conflict with any current case law, such as Timm v. Gunter, 917 F.2d 1093
(8th Cir. 1990)?"
Again, your general question regarding "any current case law" will elicit a general response from us, in the absence of any mention of specific cases in your opinion request apart from the Timm decision.
In Timm v. Gunter, 917 F.2d 1094 (8th Cir. 1990), prisoners at the all-male Nebraska State Penitentiary brought an action alleging that allowing female guards to perform pat searches and to see them nude or partially nude violated their right to privacy. The prisoners sued a class of female guards at the penitentiary along with other state defendants, and the female guards counterclaimed on the basis, among other things, that male-only staff assignments in Unit 5 of the penitentiary, the maximum security unit, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). The Eighth Circuit Court of Appeals affirmed a decision by the federal district court that male-only staff assignments in Unit 5 did not violate Title VII. 917 F.2d at 1098. That decision was based upon the notion that a minimal restriction such as the Unit 5 gender-based staffing restriction did not deprive female employees of any employment opportunities. 917 F.2d at 1102 n. 13.
In the present case, § 47-111 and 81 NAC 2, § 004.02A do not allow male correctional officers to supervise female prisoners, and as noted above, male correctional officers could argue that such a restriction violates Title VII. However, as was the case in Timm and in Tharp, it appears that the restriction is minimal and will not deprive male employees of any employment opportunities. Consequently, we do not believe that the statute or jail standard are in conflict with either of those cases. We also are unaware of any additional cases which directly conflict with the requirements of § 47-111 and 81 NAC 2, § 004.02A.
Question 8. "If so, would the case law override the standard or statute until such time that the Standard could be modified?"
Since we have determined that there is no case law which conflicts with § 47-111 and 81 NAC 2, § 004.02A, there is no need for us to discuss your final question.
Sincerely yours,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
___________________________ Attorney General
[1] See Neb. Rev. Stat. §§ 23-2801 through 23-2809 (1997, Cum. Supp. 2002).
[2] We have quoted LB 417 in a legislative format where those portions of the previous statute which were deleted by LB 417are struck out, and where new language added to the statute by that bill is underlined.
[3] We assume that Ms. Wunderlich was referring here to 1974 Neb. Laws LB 782, which established the county corrections system set out in Neb. Rev. Stat. §§ 23-2801 through 23-2809 (1997, Cum. Supp. 2002).