IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


CITY OF ORD V. KOCH


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CITY OF ORD, NEBRASKA, APPELLEE,

V.

MARK A. KOCH, APPELLANT.


Filed February 11, 2020.    No. A-19-188.


Appeal from the District Court for Valley County: KARIN L. NOAKES, Judge. Affirmed.

Mark A. Koch, pro se.

Heather L. Sikyta, of Sikyta Law Office, L.L.C., for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

The City of Ord, Nebraska (the City), brought this foreclosure action against Mark A. Koch, owner of a business and a downtown store, after he failed to pay amounts owed on a special assessment levied for downtown street improvements. After a trial, the Valley County District Court entered a judgment in favor of the City and ordered Koch to pay the amount of the assessment, the accrued interest, the City's attorney fees, and the costs within 20 days to avoid sale of the property. Koch, pro se before the district court and on appeal, raises numerous alleged errors. We affirm.

## BACKGROUND

In 2006, the City proposed a project to revitalize its downtown area. According to a clerk and treasurer for the City, the downtown project included replacing streets, sidewalks, curbs and gutters, lighting, and water lines as needed in front of businesses. Funding for the project came, in

- 1 -

part, from a special assessment. Pursuant to a resolution passed and approved on September 2, 2008, assessments were imposed against property owners within four previously created street improvement districts in the downtown area. The special assessments were payable either in full within 50 days from the date of levy without interest or in 15 equal installments, subject to interest of 6½ percent per annum. The first installment was due 50 days after September 2. The remaining 14 installments were due on December 11 of each year; if an installment became delinquent, it would be subject to the rate specified by law for delinquent special assessments.

Koch owned a business that had a storefront located downtown, at 1433 M Street, which he had purchased in 2003; it was located within one of the street improvement districts. Special assessments within that district were calculated at $80 per foot of front sidewalk footage for each property. "Street Improvement Assessment No. 19" was recorded on Koch's title for his business property, reflecting a special assessment of $1,800 ($80 per 22.5 feet of front sidewalk footage); he paid $120 in 2008. From 2009 until trial, Koch never made further payment upon the special assessment.

On January 18, 2018, the City filed a foreclosure action against Koch concerning the special assessment on Koch's business property. The City named to the action other defendants believed to potentially have a right, title, or interest in Koch's business property as well. As relevant to this appeal, the City alleged "Street Improvement Assessment No. 19" was a valid lien upon Koch's business property and had not been satisfied in full or in part or extinguished. The City believed it was entitled to foreclose upon Koch's business property for satisfaction of the lien. The City requested the district court determine that the City had a valid lien on Koch's business property in the sum of $1,800 plus fees and accrued interest, and asked for costs of the action to be taxed to Koch.

On March 5, 2018, Koch, pro se, filed a one-sentence answer, denying any allegations of indebtedness to the City. Koch also separately filed a "COUNTER COMPLAINT," alleging that he properly replaced the sidewalk in front of his downtown store in "2003-2005" and that it had an estimated life of "20-50" years. He asserted that the City resolution passed on September 2, 2008, was against case law regarding negligence claims. Koch requested an order that the City pay damages for the loss of value of work already replaced, loss of access, and loss of business due to the City's construction of the sidewalk, street, and curb abutting Koch's property. He filed identical pleadings (an answer and "COUNTER COMPLAINT") on March 7, 2018. The City denied the allegations in Koch's counterclaim and asserted that Koch failed to state a cause of action for which relief could be granted; the City moved to strike and dismiss the counterclaim. Thereafter, Koch filed miscellaneous motions, which were denied. In May, Koch filed a motion for summary judgment. During a hearing on the motion in June, Koch's argument had to do with whether a new sidewalk had been necessary in front of his business as part of the downtown improvement project and whether the City had the right to impose the assessment in the first place. Koch's motion was overruled. In August, Koch's subsequent appeal from that order was dismissed by this court for lack of jurisdiction; Koch's petition for further review was denied.

Trial took place on January 15, 2019. The county treasurer certified that as of July 17, 2018, the total amount due for the street assessment on Koch's property was $3,146.24; the county

treasurer's records were received into evidence. The county treasurer testified that the special assessment was delinquent.

On January 24, 2019, the district court entered a decree of foreclosure, entering a judgment in favor of the City subject to the superior real estate tax lien of Valley County, Nebraska, that was not foreclosed upon and remained on Koch's property. The district court found that the City had a valid prior and paramount second lien upon Koch's property for "Street Improvement Assessment No. 19" in the amount of $3,241.95 plus interest of $.64 per diem after January 15, 2019; the unpaid balance was to bear interest from the date of the order as provided by law at 14 percent. The court recognized that another party had a valid lien on the property for its mortgage against the property which was subordinate to the City's lien. The court found that the "amount of taxes, special assessments, and other liens, interest and costs chargeable to the real property" was $3,121.09 (after credit of $120.86). The City was awarded attorney fees in an amount equal to 10 percent of that amount, $312.10 to be "taxe[d] as costs." The district court found additional costs of the action for filing fees, service, and publication costs totaled $211.75. Koch was to pay all costs if the property was redeemed. If not, all costs of the action would be taxed to the real estate and paid from sale proceeds. Foreclosure proceedings were ordered to commence if Koch did not pay the amounts noted in the order, including interest and costs of the action, within 20 days of entry of the judgment.

Koch, pro se, timely appeals from the decree of foreclosure.

ASSIGNMENTS OF ERROR

Koch assigns 32 errors, but even generously construed, only argues 12 of them. Of the 12 argued, we consolidate and restate them as follows: the district court erred by (1) finding the City had the authority to repair or replace sidewalks and impose a special assessment on adjacent landowners (assigned errors 24 through 28); (2) allowing witnesses to lie and not sustaining Koch's objections to such evidence (assigned errors 1, 17, and 18); (3) not allowing Koch to voir dire witnesses to determine their area of professional expertise (assigned error 16); and (4) allowing the City to offer exhibits not provided to Koch in advance of trial (assigned errors 5, 29, and 30).

The rest of Koch's assigned errors are not argued in the "Argument" section of his brief, a section which we note is presented as one continuous argument with no separate headings for any particular assigned error being discussed. This is not in compliance with appellate court rules. See Neb. Ct. R. App. P. § 2-109(B) (rev. 2014) (formatting rules for appellate briefs). In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). See, also, § 2-109(D)(1)(e) (requirements for assignments of error section in brief of appellant; consideration of case is limited to errors assigned and discussed); § 2-109(D)(1)(i) (content rules for argument section of appellant's brief); *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015) (pro se litigant will receive same consideration as if he or she had been represented by attorney, and concurrently, that litigant is held to same standards as one who is represented by counsel). Further, Koch assigns errors in his reply brief; however, errors not assigned in an appellant's initial brief are waived and may not be

asserted for the first time in a reply brief. See *U.S. Pipeline v. Northern Natural Gas Co., supra*. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

When a party fails to follow the rules of the Nebraska Supreme Court, an appellate court may proceed as though the party had failed to file a brief or, alternatively, may examine the proceedings for plain error. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). The decision to proceed on plain error is at the discretion of the appellate court. *Id.* We decline to address any assigned errors which were not argued and supported in the "Argument" section of Koch's brief.

## STANDARD OF REVIEW

A collateral attack upon a special assessment is a proceeding in equity, which an appellate court reviews de novo on the record. See *Grube v. City of Ogallala*, 223 Neb. 640, 392 N.W.2d 380 (1986). To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015).

## ANALYSIS

### ARGUMENTS RELATED TO IMPOSITION OF SPECIAL ASSESSMENT

We begin our discussion by recalling that the underlying action was initiated by the City. The City's complaint for foreclosure asserted that the City had a valid lien for $1,800 plus interest against Koch's real estate "due to Street Improvement Assessment No. 19, assessed on December 11, 2008, pursuant to Neb. Rev. Stat. §18-1751 [Reissue 2007]," for which the "2009-2014 installments" were delinquent. Contrary to assertions made by Koch, "[a]ll cities and villages may create a special improvement district for the purpose of replacing, reconstructing, or repairing an existing street, alley, water line, sewer line, or any other such improvement." § 18-1751. And except as provided in Neb. Rev. Stat. §§ 19-2428 to 19-2431 (Reissue 2007) (related to adjacent land within agricultural use zone being used exclusively for agricultural use), "the city council or board of trustees may levy a special assessment, to the extent of such special benefits, for the costs of such improvements upon the properties found specially benefited thereby, whether or not such properties were previously assessed for the same general purpose." § 18-1751. Additionally, the City claimed it was entitled to foreclose upon Koch's real estate to satisfy its lien, and there is no question the City had the authority to do so. See Neb. Rev. Stat. § 18-1216(1) (Reissue 2007) ("[a]ny city of the metropolitan, primary, first, or second class or any village shall have authority to collect the special assessments which it levies and to perform all other necessary functions related thereto including foreclosure").

In his answer, Koch denied any allegations of indebtedness to the City for "SIDEWALK REPLACEMENT AND ASSESSMENT IN RESOLUTION NO. 1105." Koch separately filed a "COUNTER COMPLAINT" in which he claimed he had replaced the sidewalk in front of his property "IN 2003-2005" and it had an estimated life of 20 to 50 years. He asserted that in "2007-2008" the City chose to replace the sidewalk and that the City's September 2, 2008,

"RESOLUTION (NO. 1105)" was passed and resulted in damages to Koch, namely that the sidewalk was replaced before necessary, the access to his business was blocked for 2 to 3 months, parking for his customers was more restrictive, and "THE LOSS OF BUSINESS WAS CLEARLY EVIDENT DUE TO THE CONSTRUCTION OF THE SIDEWALK, STREET, ETC." He claimed the assessment was "AGAINST CASE LAW" and that he "SUFFERED IN BUSINESS" due to a "FALSE LIEN" published in the local newspaper.

In its January 24, 2019, "Decree of Foreclosure," the district court did not specifically address Koch's "COUNTER COMPLAINT," but instead concluded the City's lien was valid, as well as noted other valid liens against the property; the court ordered the sale of the property if amounts due were not paid within 20 days of entry of judgment. In so determining, the district court necessarily had to conclude there was no merit to any of Koch's assertions in his "COUNTER COMPLAINT."

On appeal, Koch contends that the 2008 special assessment "SHOULD HAVE NEVER BEEN ASSESSED TO AN ADJACENT LANDOWNER [(him)] BY A CITY OF SECOND CLASS [(the City)]." Brief for appellant at 27. Koch claims the City did not have the authority to repair or replace sidewalks and impose a special assessment on adjacent landowners. Specifically, Koch asserts that the district court erred by allowing a "CITY OF SECOND CLASS" to (1) assess, repair, and replace the sidewalk; (2) do what "THE STATUTE" allows a city of metropolitan, primary, and first class to do; (3) assess charges to Koch without a "NOTICE OF POOR/DERELICT CONDITION"; (4) assess replacement costs of a sidewalk when Koch "HAD LESS THAN APPROXIMATLY [sic] 2 YEARS [prior] MADE THE SIDEWALK NEW"; and (5) assess and collect through foreclosure the replacement of a sidewalk to Koch when there is no "SPECIAL USE" for Koch. Brief for appellant at 7-8.

Unfortunately for Koch, all of his arguments challenging the special assessment should have been raised at the time the special assessment was determined in 2008. See Neb. Rev. Stat. § 19-2422 (Reissue 2007) (any owner of real property aggrieved by levy of any special assessment by any city of the first class, city of the second class, or village may appeal from such assessment, both as to validity and amount thereof, to the district court of county where such assessed real property is located; issues on appeal tried de novo, and district court may affirm, modify, or vacate the special assessment or remand case to local board of equalization for rehearing). See, also, Neb. Rev. Stat. § 19-2423 (Reissue 2007) (owner appealing special assessment shall within 10 days from levy of such special assessment file notice of appeal with city clerk and post bond); Neb. Rev. Stat. § 19-2425 (Reissue 2007) (owner appealing special assessment shall file petition on appeal in district court together with transcript of proceedings before city within 30 days from date of levy of such special assessment); *Johnson v. City of Kearney*, 277 Neb. 481, 763 N.W.2d 103 (2009) (distinguishing between (1) filing petition in error pursuant to Neb. Rev. Stat. § 25-1901 (Reissue 2008) within 30 days of judgment made by city council exercising judicial functions, such as determining whether there were sufficient objections to challenge ordinance; and (2) appeal pursuant to § 19-2422 which permits real property owners to challenge validity and amount of special assessment).

Koch filed no appeal whatsoever within 30 days from the date of levy of the special assessment at issue here. Accordingly, Koch's various challenges to the special assessment levied

can only be construed as collateral in nature. See *Grube v. Ogallala*, 223 Neb. 640, 643, 392 N.W.2d 380, 383 (1986) (city council passed resolution establishing special assessments; appellant did not post bond with city clerk within 10 days nor file petition on appeal with district court within 30 days; therefore, "attack on the special assessment levied was collateral in nature"). A property owner may collaterally attack a special assessment if such attack is limited to a challenge based on fraud, actual or constructive; a fundamental defect; or want of jurisdiction. *Foote Clinic, Inc. v. City of Hastings*, 254 Neb. 792, 580 N.W.2d 81 (1998). All defects, irregularities, and inequalities in the making of an assessment, or in proceedings prior thereto, not raised by appeal from the assessment are waived and cannot be questioned in the collateral proceedings. *North Platte, Neb. Hosp. Corp. v. City of North Platte*, 232 Neb. 373, 440 N.W.2d 485 (1989).

Koch does not allege any fraudulent actions by the City, but appears to claim the City acted outside its authority. We thus consider only whether some fundamental defect or lack of jurisdiction/authority existed in the City's imposition of the special assessment. We initially note that the power and authority delegated to municipalities to construct improvements and levy special assessments for their payment is to be strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority and the manner of exercise thereof is resolved against the city and in favor of the taxpayer. *Foote Clinic, Inc. v. City of Hastings, supra*. Although the terminology has evolved from "jurisdiction" to "authority," the Nebraska Supreme Court has established that a city lacks authority to levy special assessments when the city fails to comply with the requisite statutory steps for authorizing such assessments. *Id*. Accordingly, we consider the statutes pertinent to the City imposing the special assessment for the downtown street and sidewalk improvements.

The City identified itself as a city of the second class in its complaint and continues to acknowledge that classification on appeal. Given that classification, the City had the power to levy any other tax or special assessment authorized by law. See Neb. Rev. Stat. § 17-507 (Reissue 2007). Pursuant to Neb. Rev. Stat. § 17-509 (Reissue 2007), the City could make a number of improvements, including conducting various improvements to any streets, constructing or reconstructing "pedestrian walks" and "lighting systems," and constructing "sidewalks" and improving "sidewalk space." Those projects could be funded "by the levy of special assessments on the property especially benefited in proportion to such benefits." *Id*. Generally, all improvements to be funded by a levy of special assessment on the property especially benefited had to conform to Neb. Rev. Stat. §§ 17-510, 17-511, or 17-512 (Reissue 2007). § 17-509.

The record reflects the City found it necessary to improve its downtown streets and sidewalks and initiated proceedings under § 17-511 to fund the project, in part, by the levy of special assessments on created districts in the downtown area. Section 17-511 provides that the City had to create by ordinance an improvement district and, after the passage, approval, and publication of that ordinance, publish notice of the creation of any improvement district according to specific requirements stated in the same section. Section 17-511 further provides that:

> If the owners of the record title representing more than fifty percent of the front footage of the property directly abutting on the street or alley to be improved file with the city clerk . . . within twenty days after the first publication of such notice written objections to the

creation of such district, such improvement shall not be made as provided in such ordinance, but such ordinance shall be repealed.

But if objections were not filed against the district in the time and manner prescribed in § 17-511, the City was to "immediately cause such work to be done or such improvement to be made," "contract for the work or improvement," and "levy assessments on the lots and parcels of land abutting on or adjacent to such street or alley especially benefitted in such district in proportion to such benefits to pay the cost of such improvement." *Id.*

Before proceeding with any improvement, the sufficiency of the protests or the existence of the required facts and conditions had to be determined by the city council or board of trustees at a hearing of which notice had to be given to all persons who could become liable for the special assessment. See Neb. Rev. Stat. § 17-513 (Reissue 2007). Appeal from the action of the city council or board of trustees could be made to the district court of the county in which the proposed (improvement) district was situated. *Id*.

The special assessment at issue was imposed against Koch by passage and adoption of a resolution of the mayor and city council on September 2, 2008. Koch cites to various legal authority that is not controlling or otherwise relevant to a city's clear power under § 17-507 and § 17-509 to levy special assessments for street and sidewalk improvements. For example, Koch relies on *Dean v. Yahnke*, 266 Neb. 820, 670 N.W.2d 28 (2003), which is a negligence action arising from an individual's injuries sustained from a fall due to a defective condition of a sidewalk. It is not a case related to a levy of a special assessment for improvements for which a city is statutorily authorized to carry out. For the City to fund the various downtown improvements by way of a levy of a special assessment, there were certain notices to fulfill, but contrary to Koch's argument, there is no requirement to send notice of a poor or derelict condition of the sidewalk. See, § 17-511 (requiring notice of creation of any improvement district); § 17-513 (requiring notice of hearing to take place before proceeding with any improvement). On appeal, Koch does not dispute receipt of either notice required under § 17-511 or § 17-513.

On January 30, 2006, a public meeting was held about the proposed downtown improvements. According to an affidavit of the clerk/treasurer for the City, on February 14, 2006, a notice was mailed to Koch's residential address in Sargent, Nebraska (same address used in signature box for his appellate briefs) about the creation of the street improvement district that encompassed his store in Valley County. A certified mail receipt indicated the notice was sent to Koch (Koch indicated disagreement that the notice was received by him). The clerk/treasurer testified that a letter, dated February 14, 2006, also would have been sent to Koch (Koch objected to that testimony because there was no "reference" that it was sent to him). That letter stated that property owners had until March 8, 2006, to file written objections to the creation of the districts (including the district in which Koch's property was located). The letter also stated that a hearing would be held on March 15 at 5:30 p.m. at the Ord City Hall to determine the sufficiency of the written objections. Attached to the letter was a "detailed notice of the creation of the districts," which shows that the creation of the improvement districts was pursuant to "Ordinance No. 733, which was published in pamphlet form," on February 15.

The minutes of the public hearing on March 15, 2006, show that after receipt of an insufficient number of written objections and upon all required facts and conditions for the creation of the street improvement districts (including the one containing Koch's store), the resolution creating those districts was passed and adopted; there are four written objections in our record (none authored by Koch). The clerk/treasurer for the City stated that Koch did not file a written objection; Koch did not dispute that. According to the minutes of the public hearing on September 2, 2008, notice was published beforehand that the hearing would be held to consider the levy of special assessments to pay for the improvements; no written objections were filed and one individual was heard before the resolution imposing the special assessment was passed and adopted.

The law presumes that official acts of public officers were done correctly and with authority in the absence of evidence to the contrary; further, acts done, which presuppose existence of other acts to make them legally effective, are presumptive proof of the existence of such other acts. See *Belza v. Village of Emerson*, 159 Neb. 651, 68 N.W.2d 272 (1955). The City had the authority to impose the levy for the special assessment to fund the various improvements under § 17-507 and § 17-509. The record indicates that the City adhered to the procedures set forth in § 17-511 and § 17-513 to levy a special assessment on property owned by property owners such as Koch to fund the downtown improvements. On appeal, Koch does not claim he did not receive the notices required under § 17-511 and § 17-513. He had the opportunity to submit objections to the City but there is no evidence that he did so. Koch also had the opportunity to appeal matters related to the validity and amount of the special assessment within 30 days of the amount being determined, however, Koch failed to do so. Now that the City is seeking payment of his delinquent debt, Koch attempts to collaterally attack the special assessment. Koch's collateral claims are either refuted by law and/or by the record; we find no evident fundamental defect or jurisdictional issue in the City's special assessment against Koch. Therefore, Koch's collateral claims challenging the special assessment fail. See *Foote Clinic, Inc. v. City of Hastings*, 254 Neb. 792, 580 N.W.2d 81 (1998). The district court properly disregarded such claims in entering its order finding the City's lien to be valid and ordering the sale of Koch's property if the amounts determined were not paid within 20 days.

ARGUMENTS RELATED TO WITNESS TESTIMONY

Koch contends there were issues of witness credibility, and that the district court erred by allowing witnesses "TO LIE." Brief for appellant at 6. He claims that one witness said "'YES'" and then "'NO'" to the same question, and that a witness was incompetent when responding to questions about bricks, and the same witness was uncertain about sidewalk footage. Brief for appellant at "27B." He claims the district court erred by allowing two witnesses "TO MISREPRESENT WITHIN MINUTES OF THE ANSWERS OPPOSING ANSWERS TO THE SAME QUESTIONS UNDER OATH ON THE WITNESS STAND." Brief for appellant at 28. Koch suggests the credibility of witnesses was questionable given "SUCH INAPPROPRIATE ANSWERS." *Id*.

Koch appears to be arguing that certain witness testimony was not reliable, but he fails to provide any explanation for how such testimony was even relevant to the foreclosure action or to

any aspect of his claim that the City was without authority to impose the special assessment against his property. Further, when evidence is in conflict, an appellate court considers and gives weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). We find no merit to Koch's arguments related to the reliability of witness testimony.

VOIR DIRE OF WITNESSES

Koch claims the district court did not allow him to voir dire each witness to "DETERMINE THEIR EXPERTISE AND WHAT THEY COULD TESTIFY TO." Brief for appellant at 29. Koch states that he was overruled each time he asked to conduct a voir dire of a witness. He claims that such prejudice against a pro se litigant should not be tolerated, and further, that a pro se litigant "CAN NOT BE HELD TO THE SAME STANDARDS OF A LAWYER WHO PRACTICES LAW FOR A LIVING." *Id*.

Koch provides no specifics from the record, nor any authority to support these assertions, nor any explanation as to why voir dire was necessary in lieu of simply cross-examining the City's witnesses. We cannot find error based upon such broad, unsupported assertions. A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019). We find no abuse of discretion in the evidence admitted in the proceeding below. Further, a pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and concurrently, that litigant is held to the same standards as one who is represented by counsel. See *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Koch's argument regarding his status as a pro se litigant has no merit.

EXHIBITS NOT PROVIDED TO KOCH IN ADVANCE OF TRIAL

Koch claims that all the evidence introduced by the City over his objections should not have been received because no copies were provided to Koch in advance of trial. He argues that in approximately 8 other trials Koch had before the same court, there had been a requirement to exchange witness lists, evidence lists, and copies of evidence before "PRE-TRIAL." Brief for appellant at 30. Koch does not assert that such documents had been requested by discovery requests, nor does he explain how his receipt of such documents at the time of trial was prejudicial to him. To the extent such documents should have been supplied through discovery requests, Koch does not point us to objections on that basis. Although he states he requested "PUBLIC RECORDS" under the "FREEDOM OF INFORMATION ACT," brief for appellant at 28-29, he does not state which records nor does he explain how such a request is relevant to the exhibits offered at trial over his objections. And although Koch assigned as error that not being provided exhibits 15 through 21 before trial affected his ability to file any motions in limine to challenge such evidence before trial, he fails to provide any explanation as to the basis for such motions as related to any particular exhibit. Once again, we cannot find error based upon such broad, unsupported assertions. The exercise of judicial discretion is implicit in determining the relevance of evidence, and an appellate court will not reverse a trial court's decision regarding relevance absent an abuse of discretion. *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d

678 (2019). We again find no abuse of discretion by the district court in its handling of the exhibits offered and received in the underlying proceeding.

## CONCLUSION

Finding no merit to any collateral challenge to the special assessment imposed against Koch for the property at issue, nor any merit to the vague assertions of various evidentiary or procedural arguments made by Koch, we affirm the judgment of the district court.

AFFIRMED.